## GEORGE BOMBOLIS v. MINNEAPOLIS & ST. LOUIS RAILROAD COMPANY.[1]

December 31, 1914.

Nos. 18,922—(154).

**Federal Employer's Liability Act — nonresident alien — special administrator.**

In this action under the Federal Employer's Liability Act to recover for the death of plaintiff's intestate, it is *held:*

(1) The evidence made a case for the jury, and is sufficient to sustain the verdict.

(2) There was no fatal variance between the allegations of negligence and the proof.

(3) It conclusively appeared that no petition was presented to the probate court for the appointment of a special administrator. Such petition is jurisdictional, and, without it, the probate court has no jurisdiction to appoint such administrator, to approve his bond or to issue letters of administration. Such orders are nullities, and a settlement made by the special administrator so attempted to be appointed, in no way binds the next of kin of deceased dependent upon him for support.

(4) The allegations of the reply were sufficient to raise the question of the jurisdiction of the probate court.

(5) Nonresident aliens are entitled to the benefits of the Federal Employer's Liability Act.

(6) The five-sixths jury law applies in an action in the state court based upon the Federal statute, following Winters v. Minneapolis & St. Louis R. Co. 126 Minn. 260.

Action in the district court for Hennepin county by the administrator of the estate of Constantine Nanos, deceased, to recover $25,-000 for the death of his intestate. The case was tried before Jelley, J., who denied defendant's motion to dismiss the action, and a jury

[1] Reported in 150 N. W. 385.

Note.—The question of the constitutionality, application and effect of the Federal Employer's Liability Act is discussed in a note in 47 L.R.A.(N.S.) 38.

which returned a verdict for $3,750, to be apportioned between the surviving widow and children as specified in the verdict. From an order denying defendant's motion for judgment notwithstanding the verdict or for a new trial, it appealed. Affirmed.

*W. H. Bremner* and *F. M. Miner,* for appellant.

*George B. Leonard* and *M. Rose,* for respondent.

BUNN, J.

This action is to recover damages for the death of plaintiff's intestate, alleged to have been caused by defendant's negligence. There was a verdict for plaintiff in the sum of $3,750, the damages being apportioned as required by the Federal act under which the action was brought. Defendant moved for judgment notwithstanding the verdict or for a new trial, and appealed to this court from an order denying this motion.

1. It is first contended that there was no proof of negligence on the part of defendant sufficient to justify submission of the issue to the jury, or at least that the evidence did not warrant the jury in deciding this issue against the defendant.

The accident happened in the Kenwood yards of defendant in Minneapolis. At the place where it occurred defendant has two main tracks, designated the north-bound and the south-bound mains. A lead track connects with one of the main tracks some distance away, and runs parallel with the two mains. The distance between the middle track and each of the other tracks is about ten feet. Plaintiff's intestate, Nanos, and seven other employees of defendant, were engaged in the work of removing old ties from the middle track and substituting new ones. The method of removing an old tie was to draw it out from under the rails in a trench dug between the middle track and the lead at right angles to the tracks. The ties were eight feet long. After the ties were drawn out they were laid parallel to and between the tracks. While Nanos and his "partner" were in the space between the middle track and the lead track, with their picks in a tie, a freight train on the middle track signalled its approach. The men observed the warning and hurried to clear away obstructions from the course of the approaching train. Nanos and

128 M.—8.

his partner were engaged in turning parallel with the tracks a tie that they had just pulled from under the middle track. This was necessary, in order to prevent the engine of the approaching train from striking it. The freight train passed, and at about the same time a switch engine on the lead track struck Nanos, causing his death.

The negligence alleged and relied on is the failure of the switch engine crew to give the men working between the tracks a warning of its approach. No such warning was in fact given, or at least the jury was abundantly justified in so finding. There was testimony by at least four witnesses that it was the custom to give warning of the approach of a switch engine whenever there were men working on the track. We think that the question whether the engineer of the switch engine was negligent in not ringing his bell as he approached these men was for the jury, and that the evidence sustains the verdict on this issue. It is urged that the engineer ought not to have anticipated that the men working on the main track would take a position on or so near the lead track as to be in danger from the switch engine. But their work required them to be between the main track and the lead, the freight train was approaching on the main track, and the men were getting out of its way. It is not going very far or imposing a very onerous duty to hold that the engineer should have rung the bell.

Whether deceased was negligent was quite plainly a jury question. The case being under the Federal Employer's Liability Act, contributory negligence was not a defense, and for all that we know the jury may have found Nanos negligent and reduced the damages accordingly. This renders unnecessary a decision of the sufficiency of the evidence to support a conclusion that deceased was not negligent.

2. We find no merit in defendant's claim that there was a fatal variance between the negligence pleaded and that proved. The complaint alleged that no warning was given of the approach of the switch engine. It was not necessary that each allegation of fact be proved as alleged.

3. Defendant's main argument concerns its claim that it settled the cause of action with a special administrator of the estate of the

deceased. The answer pleaded that John F. Bernhagen was, by the probate court of Hennepin county, duly appointed special administrator of the estate of the deceased, that he gave bond and qualified, and that thereafter it was agreed between said administrator and defendant that defendant should pay in full compromise and settlement of all liability for the accident the sum of $700; that this sum was paid to and received by the administrator, and writings given releasing defendant from liability. The reply contained a general denial, an admission that the probate court "did grant a form of order assuming to appoint said John F. Bernhagen special administrator," and lengthy allegations of fraud in procuring the order, and in the settlement thereafter made.

On the trial, to sustain its defense of settlement, defendant offered in evidence the order of the probate court appointing the special administrator, the bond and order approving it and the letters of special administration. Plaintiff's attorney stated that he understood counsel that no written petition was filed in the probate court for the appointment of a special administrator, and that the order appointing Bernhagen was made without any petition being on file. Counsel for defendant then said: "Yes, we have no objection to admitting that, sir." Plaintiff then objected to the offered exhibits, because it appeared that the probate court never acquired jurisdiction over the estate of the deceased. The objection was sustained, but, on request of counsel for defendant, the matter was deferred until the following morning. When court convened then, defendant's counsel modified the admission made the day before that no petition was filed in the probate court, by admitting that this was true as far as the probate court records showed. The trial court did not think that this changed the aspect of the case, ruled that it appeared that no petition for the administrator was filed prior to the appointment, that this was jurisdictional, and sustained the objection. Defendant then proceeded to offer evidence of the settlement alleged. Objections were sustained. Among the offers of evidence so made was one to show that Mr. Patterson, an attorney, called upon the probate judge, discussed with him the death of Nanos, and asked what was best to be done. The judge advised the appointment of a special adminis-

trator, and stated he would appoint Mr. Bernhagen. Patterson asked if he should file a petition, and the judge replied it would not be necessary.

It seems very clear that it was a conceded fact that no written petition was presented to the probate court, and we hold that no such petition was presented, not merely that no petition appeared in the files. It is therefore as if the want of jurisdiction, if a petition was jurisdictional, appeared from the face of the proceedings. The question then is: Was a written petition a jurisdictional prerequisite to the appointment of a special administrator? If it was, the order of appointment and subsequent proceedings were void, and subject to collateral attack. If not, if the failure to file or present a petition was merely an irregularity, it does not make the proceedings void.

The Constitution gives the probate court jurisdiction over the estates of deceased persons. But, to exercise this jurisdiction, it is necessary that the court be called upon to act in the manner provided by law. Culver v. Hardenbergh, 37 Minn. 225, 33 N. W. 792. As stated in Hanson v. Nygaard, 105 Minn. 30, 117 N. W. 235, 127 Am. St. 523: "The Constitution of the state confers upon the probate courts general and exclusive jurisdiction over the estates of deceased persons. * * * This jurisdiction in the abstract is conferred upon the probate court of the state as a whole; but it can only be exercised by a particular court in a particular instance, and over a particular estate, when it has been invoked in the manner prescribed by the statutes. When thus invoked by a person entitled to take such action, the jurisdiction of that court attaches to the estate for the purpose of supervising, directing and controlling its administration and settlement according to law."

Was the jurisdiction of the probate court over the estate of Nanos invoked in the manner prescribed by our statutes? We unhesitatingly answer this question in the negative.

G. S. 1913, § 7227, provides: "Every proceeding in the probate court shall be commenced by petition, briefly setting forth the ground of the application, and signed by or on behalf of the party making the same, and be verified as in the case of pleadings in civil actions."

That this statute applies to a proceeding for the appointment of a

special administrator there can be no doubt. It is a general provision, and by its own terms applies to every proceeding. In Hanson v. Nygaard, supra, it was held that the failure to give notice to interested parties of the hearing on a petition for the appointment of an administrator was an irregularity merely, and not a jurisdictional defect. But it was plainly held that a petition was necessary to confer jurisdiction. Mr. Justice Elliott said: "Our conclusion, therefore, is that the jurisdiction of the probate court over the estate of a deceased person attaches when its general jurisdiction is invoked by the presentation to the court of a proper petition by some person entitled to take such action."

The statute authorizing the appointment of a special administrator, R. L. 1905, § 3702 (G. S. 1913, § 7293), permits it to be made "with or without notice," but it does not say or intimate that it may be made without a petition. This statute was considered in Hanson v. Nygaard, and was said to authorize the appointment of a special administrator without notice, but not that it could be done without a petition. But it needs no authorities to substantiate the proposition that the probate court cannot act unless it is asked to do so in the manner prescribed by statute. We hold that the probate court had no jurisdiction over the estate of Nanos, no power to appoint a special administrator, until a petition was presented to it by some person entitled to take such action. It appearing conclusively that no such petition was presented in this case, it follows that the orders appointing the special administrator, approving his bond, and granting letters of administration, were absolutely void. It is of course elementary that letters of administration issued by a court with jurisdiction are not subject to collateral attack for error or irregularity, but where the court is without jurisdiction the letters are void, and may be attacked collaterally. This also is elementary. It is the universal rule, applicable to orders and judgments of all courts. Sache v. Wallace, 101 Minn. 169, 112 N. W. 386, 11 L.R.A.(N.S.) 803, 118 Am. St. 612, 11 Ann. Cas. 348. The case cited is also abundant authority, if any is needed, that a grant of "jurisdiction of the subject matter" does not authorize a court to determine questions not brought before it by the pleadings. *A fortiori,* the general jurisdiction of

probate courts over the estates of decedents does not authorize a particular court to act in a particular estate without any pleading invoking its jurisdiction.

We do not sustain the claim that the reply was insufficient to raise the question of the want of jurisdiction of the probate court. It is true that fraud was pleaded, but there was a denial that a special administrator was appointed. This was sufficient to put in issue the validity of the pretended order.

The conclusion thus reached makes the settlement relied on an absolute nullity, though it be conceded that a special administrator regularly appointed has power to settle a cause of action for damages sustained by the next of kin of the decedent dependent upon him for support, without the consent or knowledge of the real parties in interest to or of either the appointment or the settlement. Foot v. Great Northern Ry. Co. 81 Minn. 493, 84 N. W. 342, 52 L.R.A. 354, 83 Am. St. 395; Jones v. Minnesota Transfer Ry. Co. 108 Minn. 129, 121 N. W. 606. This is a question we do not decide.

5. Whether next of kin who are nonresident aliens are entitled to the benefits conferred by the Federal Employer's Liability Act is a question which has not been directly decided by the Supreme Court of the United States. In the absence of such a decision, we follow Renlund v. Commodore Mining Co. 89 Minn. 41, 93 N. W. 1057, holding our state statute to be for the benefit of nonresident aliens, as well as residents of this state and of other states, and hold that the nonresident aliens are entitled to the benefits of the Federal Act.

6. Following Winters v. Minneapolis & St. Louis R. Co. 126 Minn. 260, 148 N. W. 106, we hold that in an action in a state court based upon the Federal Employer's Liability Act, the five-sixths jury law (G. S. 1913, § 7805) applies.

Order affirmed.