KASPER SCHANTZ, as Administrator of the Estate of Raphael Schantz, Deceased, Appellant, v. NORTHERN PACIFIC RAILWAY COMPANY, a Corporation, Respondent.

(173 N. W. 556.)

**Damages — injury of section worker — interstate commerce — Employers' Liability Act.**

1. An employee of an interstate railway carrier engaged in working as a section man upon the railroad of such carrier, who is injured returning from his work by attempting to board a moving freight train pursuant to directions

or orders of the section foreman so to do, is engaged in interstate commerce within the meaning of the Employers' Liability Act of Commerce, of April 22, 1908.

**Damages — personal injuries — question of negligence — assumption of risk — jury.**

2. In an action for personal injuries under the Federal Employers' Liability Act, where the deceased, a boy sixteen years of age, while employed as a section man upon the railway of the carrier, was injured by attempting to board a moving freight train upon his return from work, it is *held*, under the evidence, that the question of the negligence of the carrier in directing or ordering, through its section foreman, the deceased so to do, and of the contributory negligence of, and the assumption of the risk by, the deceased, were questions of fact for the jury.

**Damages — personal injuries — Federal Employers' Liability Act governs.**

3. In such action, the Federal Employers' Liability Act, applying under both the pleadings and the evidence, superseded state statutes.

Opinion filed April 25, 1919. Rehearing denied June 6, 1919.

Action for personal injuries, in District Court, Morton County, *Crawford,* J. From a judgment entered upon a verdict directed for the defendant, the plaintiff appeals.

Reversed and new trial granted.

*Jacobsen & Murray,* for appellant.

"A track repairer engaged in repairing a track over which both interstate and intrastate trains move is embraced within the provisions of the Federal Employers' Liability Act." Thornton, Fed. Employers' Liability Act, 3d ed. § 48, p. 76. Also see cases cited therein; Pedersen v. Delaware, L. & W. R. Co. 229 U. S. 146, 57 L. ed. 1125; Moyse v. N. P. R. Co. (Mont.) 108 Pac. 1062; 8 Thomp. Neg. § 4557.

"An employee working at interstate commerce is protected by the Federal Employers' Liability Act while going to and from his work." Thornton, Fed. Employers' Liability Act, § 55, p. 88; North Carolina R. Co. v. Zachary, 232 U. S. 246, 58 L. ed. 591; Southern R. Co. v. Puckett, 37 Sup. Ct. Rep. 703; Erie R. Co. v. Winfield, 37 Sup. Ct. Rep. 556; U. S. Comp. Stat. §§ 8657–8665; Umsted v. Colgate Elev. Co. 18 N. D. 309.

"The fact that the deceased may have been guilty of contributory

negligence does not mean that he assumed the risk." Seaboard Air Line R. Co. v. Horton, 233 U. S. 492, 506, 58 L. ed. 1062, 1070; Chesapeake & O. R. Co. v. DeAtley, 36 Sup. Ct. Rep. 564; 8 Thomp. Neg. p. 673, § 4614 and cases cited; N. P. R. R. Co. v. Egland, 163 U. S. 93, 41 L. ed. 82; Swords v. McDonnell, 31 N. D. 494; Van Duzen Gas & Gasoline Engine Co. v. Schelies (Ohio) 55 N. E. 998; Wheeler v. C. & N. W. I. R. R. Co. 108 N. E. 330; Clinkscales v. Wis. Granite Co. (S. D.) 160 N. W. 843; Wuotilla v. Duluth Lumber Co. (Minn.) 33 N. W. 551.

"A master is liable for injuries to an inexperienced servant in consequence of his attempt to obey a negligent order of one having authority to give the order." 8 Thomp. Neg. p. 580, § 3815. Also §§ 3809, 4924, 5382; 7 Thomp. Neg. § 5382; 83 S. W. 289.

The above case involves an order given to a laborer to jump off a train. Tuckett v. Am. Steam & Hand Laundry (Utah) 84 Pac. 507; Cook v. St. P. M. & M. R. Co. 24 N. W. 311; Strong v. Iowa C. R. Co. (Iowa) 62 N. W. 799; Swift & Co. v. Creasey, 61 Pac. 314; Sweet v. C. & N. W. R. Co. (Wis.) 147 N. W. 1054; Flynn v. Modern Steel Structural Co. (Wis.) 134 N. W. 1044; Standard Cement Co. v. Minor (Ind.) 100 N. E. 767; Sexton v. Boston Elev. R. Co. 101 N. E. 1067; Marietta Glass Mfg. Co. v. Bennett, 106 N. E. 419; Rathjen v. C. B. & Q. R. Co. (Neb.) 124 N. W. 473; 8 Thomp. Neg. § 4630; Looney v. Garfield Coal Co. (Iowa) 147 N. W. 129; Breedlove v. Gates (Neb.) 137 N. W. 871; Rathjen v. C. B. & Q. R. R. Co. (Neb.) 124 N. W. 473, holds that the method of having section men catch on to moving trains in coming from their work is dangerous and renders the company liable. 147 N. W. 1054, 136 N. W. 511, 124 N. W. 473.

*Watson, Young, & Conmy,* for respondent.

"A master is not answerable for the acts of his servant committed outside his duty, although the particular injury could not have occurred without the facilities afforded by the relation of the servant to his master." Louisville, etc. R. Co. v. Palmer, 13 Ind. App. 161, 39 N. E. 881, 41 N. E. 400; Harrell v. Cleveland, etc., R. Co. 27 Ind. App. 29, 60 N. E. 717, and many other cases cited; Louisville & N. R. Co. v. Gillen, 76 N. E. 1059; Hobbs v. Great Northern R. Co. 142 Pac. 23; Chattanooga S. R. Co. v. Myers, 37 S. E. 439; Green v.

Brainard R. Co. (Minn.) 88 N. W. 974; 3 Elliott, Railroads, p. 1303, and cases cited.

"It is the settled law in North Dakota and in the United States that a section foreman is not a vice principal." Ell v. N. P. R. R. Co. 1 N. D. 336, 48 N. W. 222; B. & O. R. Co. v. Bangle, 149 U. S. 368; see extensive notes in 51 L.R.A. 603, and 11 L.R.A.(N.S.) 1041; Vanordstrand v. N. P. R. Co. 151 Pac. 89; Reeve v. N. P. R. Co. L.R.A.1915C, p. 37, 144 Pac. 63; C. R. I. & P. R. Co. v. Koehler, 147 Ill. App. 147.

"Where there is an absolute safe and safer way to do the work open to the servant, he cannot recover if he chooses the dangerous way and is injured." Morris v. Duluth R. Co. 108 Fed. 747; Suttle v. Choctaw, O. & G. R. Co. 144 Fed. 668; Central of Georgia R. Co. v. Mosley (Ga.) 38 S. E. 350; 20 Am. & Eng. Enc. Law, p. 146; Bailey, Mast. Liab. p. 169; Iron Co. v. Brenan, 20 Ill. App. 555; Same v. Burk, 12 Ill. App. 369; Cook v. Mining Co. 12 Utah, 51, 41 Pac. 557; Iron Co. v. Carpita (Colo. App.) 40 Pac. 248; Richardson v. Coal Co. (Wash.) 32 Pac. 1012; Lewis v. Simpson (Wash.) 29 Pac. 207; Fritz v. Salt Lake & O. Gas & E. L. Co. (Utah) 56 Pac. 90; (Colo.) 71 Pac. 425; (Ga.) 36 S. E. 599; Penn. R. Co. v. O'Shaughessy (Ind.) 23 N. E. 675; Railroad Co. v. Jones, 95 U. S. 439, 440, 442, 443, 24 L. ed. 506; Railroad Co. v. Houston, 95 U. S. 697, 702, 24 L. ed. 542; Dawson v. Chicago, R. I. P. R. Co. 52 C. C. A. 286, 114 Fed. 870; Erie R. Co. v. Kane, 55 C. C. A. 141, 118 Fed. 235; Kresanowski v. Railroad Co. (C. C.) 18 Fed. 229; Gilbert v. Burlington R. Co. 128 Fed. 536; Crothy v. C. & G. W. R. Co. 141 Fed. 913; American Linseed Co. v. Heins, 141 Fed. 45.

Assuming a direct and positive order to catch the train, there can be no recovery, as the risk was open and obvious. Umsted v. Colgate Elev. Co. 22 N. D. 249; Louisville & N. R. Co. v. Williams, 194 S. W. 920; Travis v. Alabama G. S. R. Co. 73 So. 983; Mundhenke v. Oregon City Mfg. Co. 81 Pac. 977. Higgins Carpet Co. v. O'Keefe, 25 C. C. A. 222, 51 U. S. App. 81, 79 Fed. 902, in which a boy fifteen years of age, who had been at work in a room with a picking machine, was assigned to feed it, and permitted his hands to slip into the exposed cogs, which the Factory Act of New York required the master to cover; Buckley v. Mfg. Co. 113 N. Y. 540, 21 N. E. 717,

wherein a boy twelve years old slipped and threw his fingers into exposed cogs; Engine Works v. Randall, 100 Ind. 293, 50 Am. Rep. 798, in which a boy nineteen years of age permitted his hands to engage with meshing cogs; Berger v. Ry. Co. 39 Minn. 78, 38 N. W. 814, wherein a boy, in feeding rollers in a boiler making shop, permitted his hands to slip between them; Cudahy Packing Co. v. Marcan, 54 L.R.A. 258, 45 C. C. A. 517, 106 Fed. 647, in which a block on which a boy of seventeen years of age was standing slipped upon the greasy floor and caused him to throw his hand into a hasher; Glover v. Bolt Co. 153 Mo. 327, 55 S. W. 88, in which a boy engaged in pulling iron from a pile fell, and threw his fingers between closing shears; Sullivan v. Simplex Electrical Co. 178 Mass. 35, 39, 59 N. E. 645, in which the hands of a boy nineteen years of age, who was feeding rubbers between rollers, were caught and injured by them. Glenmont Lumber Co. v. Roy, 126 Fed. 530; Crothy v. C. & G. W. R. Co. 141 Fed. 913; St. Louis Cordage Co. v. Miller, 126 Fed. 495; Wilson v. A. T. & S. F. R. Co. 71 Pac. 282; Fitzgerald v. C. B. & Q. R. Co. 114 Ill. App. 118; Myers v. New York C. R. Co. 34 N. Y. Supp. 807; Baker v. Ry. Co. 64 S. E. 506; Lave Mfg. Co. v. Payne, 30 L.R.A.(N.S.) 436; McGrath v. Del. & L. Ry. Co. 100 Atl. 754; L. & N. Ry. Co. v. Dunn, 94 S. E. 661; Lindsey v. Hollerback Co. 92 S. W. 294; Texas R. Co. v. Ellison, 87 S. W. 213; Umsted v. Colgate Elev. Co. 22 N. D. 249; Hanel v. Obrigekewitsch, 39 N. D. 540, 3 A.L.R. 1029, 168 N. W. 45; Capan v. D. & L. Ry. Co. 102 Atl. 661.

"In this case the Federal court's interpretation of the common law doctrine of assumption of risk should govern." Southern R. Co. v. Gray, 241 U. S. 339; Manson v. G. N. R. Co. 31 N. D. 643; Cook v. N. P. 32 N. D. 340; Hein v. G. N. (N. D.) 159 N. W. 14; Jacobs v. Southern R. Co. 241 U. S. 229.

"The stumbling on the ties was as much responsible for the injury as the giving of the orders. This court has already held there can be no recovery when such a situation presents itself." Black v. Fair Association (N. D.) 164 N. W. 297; Manson v. G. N. Ry. Co. 31 N. D. 643, 155 N. W. 32; Cincinnati, N. O. & T. P. R. Co. v. Mealer, 50 Fed. 725; Scheffer v. Ry. Co. 105 U. S. 249; Chesapeake & O. Ry. Co. v. Ealker, 167 S. W. 131; Kellog v. Ry. Co. 94 U. S. 469; G. N. Ry. Co. v. Wiles, 240 U. S. 444; Scherer v. Schlaberg (N. D.)

122 N. W. 1000; Balding v. Andrews & Gage Elev. Co. 12 N. D. 267, 96 N. W. 305.

BRONSON, J.    This appeal is taken from a judgment entered upon a direct verdict ordered at the close of plaintiff's case.    Raphael Schantz, the deceased, a boy sixteen years of age, was seriously injured in the month of April, 1916, while attempting to board a moving freight train.    Thereafter he died in a hospital on August 21, 1916. This action is brought by the administrator of the deceased under the Federal Employers' Liability Act to recover damages due to the alleged negligence of the railway company.    On the day of the injury the deceased was in the employ of the company as a section hand with a crew working on the north branch of the defendant railway out of Mandan.    He had been so working as a section hand for some six months.    Prior to that time the boy had been raised and had worked upon a farm.    On the day in question the crew, consisting of seven men, went out to work upon a gasolene speeder provided by the defendant under the direction and supervision of a section foreman, named Peter Barron.    On that day they were repairing tracks and putting in new ties on such railway near Harmon, some 10 miles distant from Mandan.    About 4:30 P. M. they were ready to go to Mandan and to start out on the speeder, but it was not working well and then the freight train came along.    The crucial question in this case is whether the directions or orders of this section foreman, then twenty-one years of age, given at this time to this boy, the deceased, about boarding this freight train, under the circumstances, raised any issue of negligence imputable to the defendant.    The section foreman was called by the plaintiff for cross-examination under the statute.    It appeared that he was not then in the employ of the defendant, so the plaintiff called him as his witness.

He testified as follows concerning this matter:    He had been acting as section foreman for about a month.    "The boy said, 'We will have to catch the train or else we have to walk in.'    I said: 'If you want to catch the train it will be safe to get on.'    The Hartner boy came up and said: 'It is safe to get on.'    I told Schantz to get on and told the rest of the crew to get on if it comes along."

On cross-examination he testified:

"Hartner came along and asked if the train is safe to catch.    I,

said: 'All right, if you can catch it, you can get on.' Hartner said that the train is safe to catch. I said: 'All right, you can catch on when it comes along.' I got up and looked and it was running along pretty slow. I told Hartner to get on if it was safe. I told Hartner not to get on the train unless it stopped. I told him that first, and then he came along and said it is safe to get on. I said: 'All. right, if it is safe to get on, you can get on.' Hartner is the one that came up to me and suggested catching on the train. When I told Hartner the first time not to get on that train unless it stopped. I don't know if all the boys heard it. Hartner said: 'It is safe to get on.' I said: 'All right, if it is safe, you get on, and then they went over on the other side.' I said: 'If you think it is safe to get on, go ahead and get on,' then they went over to the other side of the depot. I can stop a freight train if I want to. I had the right to stop them. I know they used to stop a freight train for the purpose of getting a ride into town. I used to do it. If I would have to stop them, if they had not come along slow, I would have stopped them and put the boys on. Nobody told me that I could stop a freight train. I know that myself. They always used to do that. In a deposition given on September 22, 1916, at Mandan before a justice of the peace, I testified: 'The speeder wasn't working very good and I told them to get on the train if it stops,' and that after I told them that the boys went right across. I told them that the first time, then Hartner came along and said: 'It is safe to get on,' and then I said: 'If it is safe, get on.' In my deposition I told them not to get on if it did not stop. I told them that the first time. When I told them that I thought the train might possibly stop at the switch and they could get on. It sometimes stopped there. The men did not go right over at that time. They went over after I told them to get on."

On redirect examination he testified positively that before the deceased started to go over to get on the train he told him: "If it is safe to get on he could get on. That the first time he said if it stops get on, but after Hartner came along and said it was safe to get on you don't have to stop it, I told the boys to get on."

On recross examination he again testified that he first told the boys not to get on the train unless it stopped, and that after Hartner came over and said it was safe to get on that he told him to catch on. That he talked with Hartner; not with Schantz. That Schantz was close to

him; then afterwards he testifies that Schantz and some others were about 200 feet away. Then the court remarked that the witness should have an interpreter and asked the witness if he understood the question, whereupon he said he understood a few of them but they were speaking them all too fast. The deposition of the witness so taken was not introduced.

Adam Hartner, aged nineteen years, who was working at the time in this crew, testified for the plaintiff in a deposition as follows:

"That the section foreman told us we had to walk in or get on the freight train if she slows up. That when he said that the freight train was about $\frac{1}{2}$ mile away and then running about 13 miles per hour. That he told the fellows where to catch the train. That the reason he told us to go up by the switch was because the train slows up there and he told us it would. When the train came there it was running about 8 to 10 miles per hour."

On cross-examination this witness said that the boss first suggested catching the freight and that he said: "If she slows up, you catch her."

This testimony has been set forth considerably at length for the reason that it is deemed proper so to do in order to demonstrate the error of the trial court in directing a verdict for the defendant. In this record it clearly appears that there is testimony to the effect that this section foreman had authority, so claimed at least, to stop this train. That if it had not come along slow he would have stopped it and put the boys on. That this crew were told to get on this train, by this section foreman, whether the testimony of one witness be taken, if it slowed up, or the other, if it was safe. In either event there is testimony of an assurance or a direction to get on this freight train.

The testimony of the witness Hartner is not contradictory. There are contradictions in the testimony of the witness Barron, but they are capable of being harmonized when it is considered that such witness insists that he made two different statements. One at first to the effect that the crew should not get on unless the train stopped, and the subsequent statement made after Hartner reported to him that it was safe where he directed the crew to get on. It is not to be expected that these witnesses could repeat word for word verbatim everything that was said about this matter. These witnesses were subjected to

severe cross-examination attacking the veracity of their testimony and their motives and interest in connection with other alleged statements by them made. Both of these witnesses were practically boys. One of them had never been in court before. The court indicated that one of them should have had an interpreter. Surely it was the province of the jury, not the court, to weigh and determine as a matter of fact the truth or falsity of the same. It was not the function of the court to disregard all such testimony simply because there were inconsistencies in the testimony of one witness. State v. Brandner, 21 N. D. 310, 130 N. W. 941; Commercial Secur. Co. v. Jack, 29 N. D. 67, 150 N. W. 460; Holbert v. Weber, 36 N. D. 106, 161 N. W. 560; Jensen v. Clausen, 34 N. D. 637, 159 N. W. 30; Peterson v. Fargo-Moorehead Street R. Co. 37 N. D. 440, 164 N. W. 42; Werre v. Northwest Thresher Co. 27 S. D. 486, 131 N. W. 721.

The motion made for a directed verdict herein was in the nature of a demurrer to the evidence, and therefore all fair inferences from the evidence must be drawn in favor of the party against whom such verdict was directed; and where honest and intelligent men may fairly differ in their conclusions from the evidence upon any material fact in the case, it is error to withdraw the evidence from the consideration of the jury. John Miller Co. v. Klovstad, 14 N. D. 435, 440, 105 N. W. 164.

Taking the most favorable view of this evidence, was it negligence imputable to the defendant for the section foreman to direct or order the deceased to board this freight train while moving? The defendant contends that in any event the evidence only shows a permission so to do. That if the foreman did so order he was acting outside of the scope of his duties. In our opinion these contentions are without merit. Consideration must be given to the fact that the deceased was a mere boy, sixteen years old, and it was for the jury to place the construction upon the language or directions given this foreman. Furthermore there is no question that this boy was in the employ of the defendant while going to and from his work; that he was at work when this freight train came along, and under the directions of this foreman. Surely the jury might assume from all the circumstances that the boy was in the performance of his duty when he is directed by his foreman to catch a freight train in order to return from his

work, when it is then known that no other method of conveyance then existed, and certainly the jury might find this defendant negligent when the foreman, knowing that the speeder could not be used and that he had the right to stop the freight train if he wanted to, in order for his men to ride upon such train, deliberately assumed that it was safe for them to board this moving train.

It is one of the absolute duties of the master to exercise due care for the safety of his servants. Where it is necessary in the course of the conduct of the business of the master that orders be given to the servants concerning their conduct or the place where they are to work, or to go in pursuit of the master's business, the master has not only the right, but also the absolute power, to give such orders, and the servants have the right to assume that the master has exercised due care in so giving the same. Carlson v. Northwestern Teleph. Exch. Co. 63 Minn. 428, 65 N. W. 914; Anderson v. Great Northern R. Co. 95 Minn. 212, 103 N. W. 1021, 18 Am. Neg. Rep. 501.

In this case, the deceased was at work prior to the time the freight train came along. The foreman could have ordered him to continue to work there. He could have ordered him not to catch the freight train. He could have ordered him to wait until the speeder was repaired. None of these things did he order. There is evidence in the record which would be sufficient to uphold the finding of a jury that he did order the deceased to catch this freight train. This order, if it was given, was the act of the defendant.

This action was brought under the Federal Employers' Liability Act. The defendant stipulated in the record that at the time of this injury the railroad running through Harmon known as the North Branch road was hauling upon it interstate and intrastate commerce, and that the road was used for these purposes.

We are of the opinion that the deceased at the time he was injured was working for the defendant, engaged in the performance of interstate duties. Koofos v. G. N. Ry. Co. 41 N. D. 176, 170 N. W. 859, and cases cited. Hein v. Great Northern R. Co. 34 N. D. 440, 159 N. W. 14; Bombolis v. Minneapolis & St. L. R. Co. 128 Minn. 112, 150 N. W. 385.

The Federal Act applying, it superseded state statutes. Under such act the question of the contributory negligence of the deceased was for

the jury. Hein v. Great Northern R. Co. 34 N. D. 440, 159 N. W. 14; Bombolis v. Minneapolis & St. L. R. Co. 128 Minn. 112, 150 N. W. 385; notes in 47 L.R.A.(N.S.) 38, and L.R.A.1915C, 47.

The defendant further contends that the deceased in any event assumed the risk as a matter of law. The answer sets up no plea of assumption of risk. Nicholaus v. Chicago, R. I. & P. R. Co. 90 Iowa, 85, 57 N. W. 694; Kenyon v. Illinois, C. R. Co. 173 Iowa, 484, 155 N. W. 810.

In any event, under the record in this case we are of the opinion that the question of assumption of risk was fairly one for the consideration of the jury. Umsted v. Colgate Farmers Elevator Co. 18 N. D. 309, 122 N. W. 390; Koofos v. Great Northern R. Co. 41 N. D. 176, 170 N. W. 859.

For the error of the trial court mentioned, the judgment is reversed and a new trial granted.

Robinson, J. I dissent.

Christianson, Ch. J. (dissenting). I am unable to agree with the conclusion reached by my associates in this case. Only two witnesses testified to the matters relating to the accident,—Baron and Hartner. Baron was the section foreman. He testified: "We were figuring on starting out and saw the train coming along. The boys said, "We will have to catch the train or else walk in." He testified positively that when "the boys" (members of the crew) first came and asked about riding in on the freight train, he "told them not to get on if it did not stop;" that at the time this statement was made the members of the crew, including the deceased, "were all around." Baron at the time was at work trying to get the "speeder" to run. The members of the crew thereupon went down to some point near the switch or depot. A little later "the Hartner boy" came back to where Baron was working, and said, "The train is safe to catch,"—"it is safe to get on the train without stopping." Baron says that when Hartner made this remark he (Baron) looked up and observed that the train "was running along pretty slow," and that he thereupon replied to Hartner, "All right, if it is safe you can get on." At the time this talk took place Baron was some distance away from the track, where the de-

ceased and the other members of the crew were. After this talk, Hartner went back to where the rest of the men were, and "they went on the other side of the track," and lined up to catch the train.

The witness Hartner, on his direct-examination in answer to one question, said: "He (the foreman) told us we had to walk in or get on if she slowed up." In another answer he said: "He said, get on that train or walk in. *If you don't want to walk in get on that train if she slows up.*" Hartner was the only witness who purported to give a description of the accident. He said: "All I see is that he tried to catch it and *stumbled* over some ties and dragged on the end of the ties, and then he rolled down from the side of the bank."

While Baron stated that he had authority to stop freight trains and had done so, he did not claim that this was for the purpose of permitting the section crew to ride on such trains. On the contrary he testified positively that the crew at no time before had ridden in on a freight train. This testimony was not contradicted by anyone. Baron also testified that on other occasions the section crew had walked in, and that when they were required to do so they always received pay up to the time they got in.

It is undisputed that the suggestion that the crew ride in on the freight train came from the members of the section crew. When they attempted to get on the moving freight train, they knew that the foreman himself had no intention of doing so, but that he was at work fixing the "speeder." The members of the crew really asked the foreman for permission to get on the freight. According to the foreman's testimony he (the foreman) told them they might get on if the train stopped, but "not to get on if it did not stop;" and that later upon the solicitations of Hartner, and at his suggestions that it was safe to catch the train even if it did not stop, he (the foreman) said they could get on if it was safe to do so. And according to Hartner's version of the matter the strongest language used by the section foreman was: "Get on that train or walk in. *If you don't want to walk in get on that train if she slows up.*"

Of course it is conceded that plaintiff must establish the fact that there was an order, and that the deceased was injured in conforming to and obeying such order. Labatt, Mast. & S. §§ 1357, 1358. Can it be said that the section foreman gave any direct, specific, and per-

sonal order to the men, including the deceased, to get on the moving freight train? It seems to me that the evidence in this case does not warrant reasonable men in arriving at such conclusion.