**Ludvig VICK, Plaintiff and Respondent,**

**v.**

**Ernest FANNING, Defendant and Appellant.**

**No. 7916.**

Supreme Court of North Dakota.

July 1, 1964.

Nilles, Oehlert & Nilles, Fargo, for appellant.

David Kessler, Grand Forks, for respondent.

BURKE, Judge.

In this action the plaintiff, a farm laborer, sued the defendant, his employer, for damages for injuries he received while operating a farm truck. Issues of the negligence of the defendant, assumption of risk and contributory negligence of the plaintiff were raised by the pleadings and by the evidence adduced in the trial of the case. The trial resulted in a verdict and judgment for the plaintiff. The defendant moved for judgment notwithstanding the verdict. This motion was denied by the trial court and defendant has appealed from the order denying his motion.

The only issues upon this appeal relate to the sufficiency of the evidence. Defendant urges that the evidence is insufficient to support a finding by the jury of negli-

gence on his part, or that his alleged negligence was the proximate cause of plaintiff's injuries. He also asserts that the undisputed evidence, as a matter of law, establishes assumption of risk and contributory negligence on the part of the plaintiff.

In his complaint the plaintiff alleged that defendant was negligent in requiring him to operate a truck which had a defective mechanism for operating the hydraulic hoist which raised and lowered the grain box on the truck and in demonstrating to him a dangerous method of operating the defective valve control of the hoist mechanism.

Plaintiff was an employee of the defendant. One of his duties as such employee was hauling grain. For this purpose he was furnished a truck equipped with a grain box which could be raised and lowered by a hydraulic hoist. The regular controls for the operation of the hoist were installed in the cab of the truck under the instrument panel. They consisted of a power take off and a valve control. The valve control was of the push rod type which operated the valve by means of an attached cable. When the rod was pulled all of the way out, the hoist would elevate the box, when the rod was half way out the box would remain stationary in any position to which it had been raised and when the rod was all of the way in, the mechanism would lower the box. The valve control on this truck, however, would sometimes stick in the "out" position with the result that the grain box would be raised too high for proper unloading and the grain would spill over the top of the end gate. The only way in which plaintiff, at first, knew how to cope with this contingency was to disconnect the power take-off or stop the engine. Deprived of power, the hoist mechanism would then gently lower the box. When the box was in proper position, plaintiff would start the engine or reengage the power take off and the box would again rise. Plaintiff testified that, by repeating this cycle about four times he could get the box unloaded.

The day before plaintiff was injured defendant undertook to explain and demonstrate to plaintiff how the hoist mechanism could be operated by a lever attached to the frame of the truck under the box. He started the engine with the hoist valve control in the "out" position and the power take off engaged and the box began to rise. When the box had risen to a sufficient height, defendant, according to plaintiff's testimony, reached under the box and over the frame of the truck, raised the lever to the correct position and the box stopped at the desired elevation. He told plaintiff that he could operate the box in this manner if the control stuck again.

The next day the plaintiff hauled a truck load of corn from the elevator in town to the defendant's farm, and he attempted to unload the truck by the method defendant had demonstrated. He started the motor, engaged the power take off and pulled out the valve control. The valve control stuck in the "out" position. When the box had risen about 4½ to 5 feet, he disengaged the power take off and the box started slowly to descend. He testified that the box had descended about six inches by the time he got into position to operate the control under the box.

Then with the box descending and the power take off disconnected he attempted to stop the descent of the box by lifting the lever in the manner demonstrated by the defendant. Plaintiff stated that the lever did not move easily and that he jerked it to get it started, with the result that he moved it too far and the box dropped and crushed his right arm between the bottom of the box and the frame of the truck.

■■ Upon an appeal from an order denying defendant's motion for judgment notwithstanding the verdict, the evidence must be considered in the light most favorable to the plaintiff and plaintiff is entitled to the benefit of all inferences and conclusions which reasonably follow from such evidence. Severinson v. Nerby Const. Co.

(N.D.) 105 N.W.2d 252; Mischel v. Vogel (N.D.) 96 N.W.2d 233; Schantz v. Northern Pac. R. Co., 42 N.D. 377, 173 N.W. 556. Questions of negligence, proximate cause, contributory negligence and assumption of risk are ordinarily questions of fact for the jury. It is only where the evidence is such that reasonable men can draw but one conclusion therefrom that they become questions of law for the court. Lusty v. Ostlie (N.D.) 71 N.W.2d 753; Geier v. Tjaden (N.D.) 74 N.W.2d 361; Schweitzer v. Anderson (N.D.) 83 N.W.2d 416; Abelstad v. Johnson, 41 N.D. 399, 170 N.W. 619.

 From the evidence it appears that the truck furnished by the defendant to the plaintiff, although defective was reasonably safe for use by the plaintiff until the defendant demonstrated an unsafe way for him to use it. Plaintiff knew how to operate the hoist mechanism in a cumbersome, but safe way and it was not until defendant had shown him an easy unsafe way to operate it that the truck became dangerous as to him. It is the duty of the employer to furnish his employees with reasonably safe machinery, tools and appliances. Cameron v. Great Northern R. Co., 8 N.D. 124, 77 N.W. 1016; Warehime v. Huseby, 38 N.D. 344, 165 N.W. 502; Prefontaine v. Great Northern R. Co., 51 N.D. 158, 199 N.W. 480. Also, where there is a safe way and an unsafe way of doing the work, the master must instruct the servant how to do it to avoid injury. Hanel v. Obrigewitsch, 39 N.D. 540, 168 N.W. 45, 3 A.L.R. 1029. The demonstration to the employee of an unsafe way of doing his work and the suggestion that he use it without making certain that the employee understood his instructions, or warning him of additional and greater dangers that might result from a failure to follow the instructions precisely, would, a fortiori, be a breach of the employer's duty and evidence that the employer had so acted is sufficient to support the jury's finding of negligence on his part.

 Upon the question of proximate cause defendant urges that the conduct of the plaintiff, himself, after the valve mechanism failed to work, was the intervening, sole and proximate cause of his injury. The argument made in support of this contention rests on the premise that the only negligence, if any, proved against the defendant, was that he furnished the plaintiff a truck with a defective valve control, and that the defective valve control did not cause the injury. Defendant ignores the fact that the jury could also have found that he was negligent in showing plaintiff a dangerous way to operate the hoist, without giving him a sufficient explanation or warning. In order for a negligent defendant to be exonerated by an intervening cause, the claimed intervening cause must be one that severs the connection of cause and effect between the negligent act and the injury. Boss v. Northern Pacific R. Co., 2 N.D. 128, 49 N.W. 655; Emmerich v. Kansas City Public Service Co., 177 Kan. 443, 280 P.2d 615; Ricker v. Danner, 159 Neb. 675, 68 N.W.2d 338; Kingsland v. Erie County Agr. Soc., 298 N.Y. 409, 84 N.E.2d 38, 10 A.L.R.2d 1; Magnolia Petroleum Co. v. Barnes, 198 Okl. 406, 179 P.2d 132. One test of whether there was a continuous succession of events leading proximately from negligence to injury is whether the act of the injured party was a normal response to the stimulus of a dangerous situation created by such negligence. New York, C. & St. L. R. Co. v. Affolder, 8 Cir., 174 F.2d 486.

In the instant case the chain of causation between the negligent act and plaintiff's injury is so clear that the jury could hardly have found otherwise than it did upon the issue of proximate cause. Defendant required plaintiff to use a truck with a defective hoist mechanism. Because of the defect defendant demonstrated to plaintiff a dangerous way to operate the hoist. Because the use of the dangerous method had been demonstrated, and its use suggested by defendant, plaintiff attempted to use it and was injured. This evidence was undoubtedly sufficient to warrant a finding

by the jury that defendant's negligence was a proximate cause of plaintiff's injury.

The defendant asserts, however, that, even conceding his own negligence, plaintiff may not recover because of his contributory negligence and assumption of risk. In support of this contention he relies upon plaintiff's own testimony. Plaintiff testified that after defendant had demonstrated how to control the hoist mechanism by the use of the lever under the box he said: " * * there may be some danger about doing it this way." And defendant replied, "You want to be careful." Plaintiff was then asked: "What idea did that convey to you, those words?" He replied, "Well, it made me try,—I tried to be careful when I was operating it in that manner." On plaintiff's cross-examination the following appears:

"Q. * * * you had at least two other methods you could have used other than the one you did pursue and the other two. methods you had used before? That is, shoveling it out or let the box go up and settle. They were perfectly safe methods were they not?

"A. Yes, they were.

"Q. Then there was the other method which you regarded yourself, as a dangerous method, did you not, Mr. Vick?

"A. Well I recognized it wouldn't be too safe.

"Q. Yes, sir. And so you had a choice of three methods and selected the one which you say wasn't too safe, is that right?

"A. Well, yes, but I was showed this way * * *."

The following also appears in plaintiff's testimony:

"Q. There wasn't any question about it that you recognized that putting your hand in over the top of the frame particularly when you, your-self, were going to pull on the lever that may drop the box that was a dangerous situation?

"A. Well, yes, I recognized it would be.

"Q. That it was dangerous to do that?

"A. I realized there was a little danger to it.

"Q. The very danger you had in mind is that if you accidentally or otherwise pulled the hook too far the box could come down and catch your arm or hands?

"A. Yes."

Upon the basis of this testimony defendant argues that plaintiff had precise knowledge and appreciation of the danger involved in operating the hoist mechanism in the manner suggested by defendant and that by choosing the suggested method when other safer methods were available and no emergency existed, plaintiff assumed the risk involved in the operation of the hoist by the chosen method, as a matter of law. Defendant emphasizes the fact that plaintiff was not ordered to use any particular method of unloading the truck and that he voluntarily chose to use a method which he knew "was not too safe."

In opposition plaintiff contends that, while he knew there was some danger in the suggested method, he did not fully understand the full extent of the danger and that under the evidence the jury could reasonably have found that he did not fully appreciate the risk and therefore did not assume it.

■ It is well settled in the law of this State that a servant assumes the ordinary risks of his employment which are obvious and of which he is, or must be held to be, aware. He does not assume extraordinary risks unless he understands and appreciates. or ought to understand and appreciate such risks. Torgerson v. Minneapolis, St. P. &

S. S. M. R. Co., 51 N.D. 745, 200 N.W. 1013; Lund v. Knoff (N.D.), 85 N.W.2d 676, 67 A.L.R.2d 1110.

The jury was instructed in accordance with the above rule and it must be assumed therefore that the members thereof unanimously agreed that plaintiff did not appreciate and therefore did not assume the risk of operating the hoist in the manner demonstrated by defendant. It must also be assumed that the jury, following the trial judge's instructions on contributory negligence, found that plaintiff, in acting as he did, behaved as an ordinarily prudent person, having like knowledge and experience, would have behaved.

■ The question before us therefore is: Could reasonable men have drawn these conclusions from the evidence in this case?

Plaintiff testified that he knew there was some danger in operating the hoist as he did, that the precise danger was that he might move the activating lever too far and the box might drop and injure his arm or hand. Despite this knowledge, when he found that the lever was "stuck," he gave it a "jerk" to start it, with the result that he moved it too far and the box dropped, catching his arm between the frame of the truck and the bottom of the box.

Plaintiff also testified that the evening before the injury, defendant said to him: "Come along. I'll show you how to operate this hoist if the control happens to stick on you when you go to haul this feed." Following this invitation the parties proceeded to the place where the truck was standing. Defendant started the engine, engaged the power take off and pulled the valve control rod out to the position where the box would rise. Defendant then proceeded around to the right hand side of the box. By that time the box had raised sufficiently to permit him to grasp the lever underneath the box. Plaintiff testified that from this position and by moving the lever or hook which extended above the frame

of the truck and between it and the bottom of the box, defendant caused the box to stop, to descend and to rise. This complete operation was not mechanically possible in the manner testified to by plaintiff since the hook or lever which plaintiff said defendant used was not connected to the valve operating mechanism by a fixed connection. Beneath the frame of the truck, extending downward was a metal arm to which was attached a pushrod which in turn was attached to the valve control. The lower end of the hook, by which plaintiff said defendant operated the hoist mechanism, extended downward beneath the fulcrum on which it rotated and abutted against the arm to which the valve control pushrod was connected. It was kept in contact with this arm by spring tension. When the valve control rod was moved toward the front of the truck, it pushed the arm to which it was attached in the same direction. This arm in turn pushed the bottom of the hook forward, causing it to rotate on its fulcrum with the result that the top of the hook moved up and towards the rear of the truck releasing the box so it could rise. When the hoist mechanism was elevating the box, the arm beneath the frame and the lower extension of the hook which abutted against it were in the forward position while the top of the hook was toward the rear. Thus, by pulling the top of the hook toward the front of the truck, the bottom of the hook would rotate to the rear, pushing the valve control in the same direction, and causing the box to stop or descend. This process could not be reversed, however, for while the lower section of the hook would push the control rod, it could not pull it. Thus, a rising box could be stopped or lowered, by its use, but the box could not be elevated or stopped once the box started to descend with the control in lowering position.

When plaintiff, in his attempt to stop the box, pulled the hook beyond the position where it would stop the box, there was nothing he could do to stop its descent by

moving the hook. Plaintiff testified, that he thought he would be safe if he watched the box and that he did watch the box. From this testimony and other evidence in the case the jury could well have inferred that he mistakenly believed that he would have complete control of the operation of the hoist mechanism through the use of the hook and that by moving it forward and backward he could stop, lower or raise the box at will.

It has been urged by the defendant that since plaintiff's account of the demonstration of the method of activating the hoisting mechanism, by the use of the hook located under the truck box could not be wholly true, that defendant's statement that he made the demonstration by stooping, reaching under the frame of the truck and operating the hoist mechanism by the use of the metal arm which was directly connected to the valve control pushrod, must be accepted as wholly true, and that therefore there was no evidence of negligence on the part of the defendant.

While this was a possible inference from the evidence in the case we do not think it was a necessary one.

Plaintiff at the time of the accident was about 58 years of age. He had only an 8th grade education and had worked as a farm hand all his life. He was familiar with the operation of farm machinery but not with principles governing such operation and while, in answer to some leading questions relating to the mechanics of the operation of this hydraulic hoist, he gave affirmative responses, it is clear that he did not understand the mechanics of the operation which caused his injury.

The jury could well have found that plaintiff's testimony was given in good faith and was in its main essentials true. It could have found that defendant did conduct the demonstration from a standing position, by the use of the hook, which extended above the frame of the truck and that in doing so he placed his arm in a position of danger and that plaintiff's recollection was faulty as to the extent of the operation conducted by this method.

Plaintiff watched his employer operate the hoist mechanism with complete safety and inferentially the employer had assured him that the operation would be safe if he watched the box. It is certain from the testimony of both the plaintiff and defendant that defendant did not make sure that plaintiff understood the alternate method of operating the hoist by having him attempt to operate it in his presence after the demonstration. Plaintiff's testimony also shows that even at the time of the trial he thought the hoist mechanism could be operated in all its phases by the use of the hook with which he attempted to operate it.

We are of the opinion, therefore, that reasonable men could have found from the evidence that, while plaintiff understood that there was some danger in operating the box as he did, he unknowingly subjected himself to a far greater risk than any of which he was aware and that it was this greater hazard which was responsible for his injury. The evidence is thus sufficient to warrant a finding that there was no assumption of risk by the plaintiff.

What we have said above to a large extent disposes of the question of contributory negligence. Whether it was an act of ordinary prudence for a farm hand of plaintiff's education, knowledge and experience to attempt to use a suggested method of operating a hoist upon a farm truck, that had been demonstrated with complete safety by the employer, was a question for the jury.

The judgment of the district court is therefore affirmed.

MORRIS, C. J., and TEIGEN, J., concur.

ERICKSTAD and STRUTZ, JJ. did not participate.