MARY A. KRAUSE, Respondent, v. CITY OF WILTON, Appellant.

(168 N. W. 172.)

**City — defective sidewalks — inadequate lighting of streets — negligence — damages for injuries — action for.**

1. The court will not hold as a matter of law that negligence is not shown where a city allows three boards to be missing from a sidewalk and an opening to exist some 20 inches in breadth and from 2 to 5 inches in depth, and where the lighting of the street is more or less inadequate.

NOTE.—For authorities passing on the question of liability of municipality for injuries resulting from loose or decayed boards in sidewalk, see note in 20 L.R.A. (N.S.) 642; on contributory negligence as affecting liability of municipality for defects in streets and sidewalks, see notes in 21 L.R.A. (N.S.) 614, and 48 L.R.A. (N.S.) 628.

**Traveler — defective sidewalks — knowledge of — not required to avoid traveling on — because of such knowledge.**

2. A traveler is not required to avoid traveling upon a sidewalk merely because he has knowledge that it is defective.

**Negligence — contributory negligence — questions of — primarily for jury.**

3. The question of negligence and of contributory negligence are primarily and generally questions of fact for the jury.

**Contributory negligence — burden of proving — upon defendant.**

4. The burden of proving contributory negligence rests upon the defendant.

**Knowledge of defective sidewalk — defects at some particular place in — does not impute knowledge of.**

5. Knowledge that a sidewalk is defective does not necessarily impute knowledge of a defect at any particular point.

**Knowledge of defect — failure to remember — at all times when walking on such sidewalk — not negligence as a matter of law.**

6. Although one may not go blindly forward without looking ahead and take the chances of getting along safely, it is not negligence as a matter of law for a person who has knowledge of a defect not to remember it at all times and under all circumstances, nor to be momentarily forgetful of it.

Opinion filed June 1, 1918.

Action for personal injuries.

Appeal from the District Court of McLean County, Honorable *W. S. Nuessle*, Judge.

Judgment for plaintiff. Defendant appeals.

Affirmed.

*Wade A. Beardsley, James T. McCullouch,* and *E. T. Burke,* for appellant.

An injury alone is not sufficient to support a verdict in a personal injury action. There must be evidence of negligence on the part of defendant amounting to proximate cause.

There is an entire want of proof of negligence on the part of appellant. The proof shows that the sidewalk in question was receiving proper care by the appellant city, and that respondent's injury was the result of her own negligence. Note in 43 L.R.A. (N.S.) 1158; Hartnet v. New York, 127 N. Y. Supp. 295; Powers v. East St. Louis, 161 Ill. App. 163; Huntinton v. Bartrom, 48 Ind. App. 117; Gastel v. New

York, 194 N. Y. 15, 128 Am. St. Rep. 540, 16 Ann. Cas. 635; Snyder v. Superior, 164 Wis. 671; Kawiecka v. Superior, 20 L.R.A.(N.S.) 633; Davidson v. New York, 133 App. Div. 352, 117 N. Y. Supp. 185; Anderson v. Toronto, 15 Ont. L. Rep. 443; Breckman v. Comington, 143 Ky. 444; Ewing v. Toronto, 29 Ont. Rep. 197.

Where plaintiff's own negligence contributed so materially to her injury, as is shown in this case, she cannot recover. She knew for some time before the injury of this claimed defect in the sidewalk, and if it was in the condition claimed, she should not have traveled upon it, when there were other routes easily accessible to her. Without cause or reason she negligently traveled over this walk. Moeller v. Rugby, 30 N. D. 438; 13 L.R.A.(N.S.) 1262; 17 L.R.A.(N.S.) 195; 21 L.R.A.(N.S.) 614.

It is the duty of a person, knowing the facts and conditions, to care for himself. 28 Cyc. 1419, 1428.

*James A. Hyland* and *T. J. Krause,* for respondent.

The hole or depression in the sidewalk into which plaintiff stepped while walking on said sidewalk in the nighttime, and which she claims was the cause of her injury, is a sufficient defect in the walks upon which to base a verdict. Foster v. Kansas City, 133 S. W. 562; O'Brien v. Syracuse, 31 App. Div. 328, 52 N. Y. Supp. 322; Lawrence v. Davis, 8 Kan. App. 225, 55 Pac. 492.

In any event all such questions are for the jury, and the court has no right to say, as a matter of law, that a given and described condition in a sidewalk in a city is not a dangerous defect. So, also, is the question of negligence one for the jury, in such cases. Marvin v. Bedford, 158 Mass. 464, 33 N. E. 605; Bieder v. St. Paul (Minn.) 91 N. W. 20; Crites v. New Richmond (Wis.) 73 N. W. 322; Aslen v. Charlotte, 54 N. Y. Supp. 754; Graham v. Oxford (Ia.) 75 N. W. 473; Hall v. Austin (Minn.) 75 N. W. 1121; Finnigan v. Sioux City (Ia.) 83 N. W. 907; Thoorsell v. Virginia, 163 N. W. 976; Demier v. Hyatt, 28 Colo. 129, 64 Pac. 403; Beltz v. Yonker, 74 Hun, 73, 26 N. Y. Supp. 106.

Where plaintiff was obliged to undergo an operation soon after the accident, it was left to the jury to determine whether or not the fall of plaintiff was the primary cause of the operation. Jones v. Caldwell (Idaho) 130 Pac. 995.

Also as to whether or not the street was properly lighted. Ashland v. Boggs, 161 Ky. 728, Ann. Cas. 1916B, 1008; West v. Eau Claire (Wis.) 61 N. W. 313; Crites v. New Richmond (Wis.) 73 N. W. 322.

Proximate cause, contributory negligence, and existence of notice are all questions for the jury, under proper instructions from the court. Thoorsell v. Virginia (Minn.) 163 N. W. 976; Pyke v. Jamestown, 107 N. W. 359.

BRUCE, Ch. J.   This is an action to recover damages for an injury alleged to have been received by reason of three boards having been removed from a sidewalk in the city of Wilton. The defendant appeals and argues error in the court's failure to direct a verdict for the defendant. It claims:

"1. That there was no defective sidewalk.

"2. That even if there was such a defect, the plaintiff is merely guessing that her injury was caused thereby.

"3. That she was guilty of contributory negligence."

We cannot hold as a matter of law that there was no proof of negligence on the part of the defendant. The proof shows that three boards were missing, and that the opening was some 20 inches in breadth and from 2 to 5 inches in depth. It also shows that the lighting was more or less inadequate. This was a defect in the structure of the sidewalk itself, and a defect for which the city was certainly responsible, if, indeed, it was responsible for sidewalks at all, and this responsibility is now generally recognized. See Pyke v. Jamestown, 15 N. D. 157, 107 N. W. 359.

Nor can we say as a matter of law that the plaintiff was guilty of contributory negligence because she had reason to believe that the sidewalk was out of repair and had therefore no right to walk thereon. It was the sidewalk which led to her home, and it does not seem that one must avoid such walks altogether. Ibid.; Jackson v. Grand Forks, 24 N. D. 601, 45 L.R.A.(N.S.) 75, 140 N. W. 718; Ouverson v. Grafton, 5 N. D. 281, 65 N. W. 676; 13 R. C. L. 475.

It is true that in the case of Moeller v. Rugby, 30 N. D. 438, 153 N. W. 290, we held that contributory negligence was shown as a mat-

ter of law. We did not, however, so hold on the ground that the plaintiff had no right to travel upon the sidewalk, but that, knowing of the defect and remembering it both on her way to and from the house from which she sought to remove the goods, and after traveling over the defect to her own home, she encumbered herself with so many articles that it was almost impossible for her to travel in safety.

Nor can we say as a matter of law that the plaintiff was guilty of contributory negligence because at the time of the accident she was talking to her husband and did not notice the pitfall which was before her. The questions of negligence and of contributory negligence are primarily questions for the jury, and the burden of proving contributory negligence rests upon the defendant. Pyke v. Jamestown, supra.

Though there is proof that the plaintiff knew that the sidewalk was defective, there is no proof that she knew of the absence of the boards at this particular place; nor does she testify as to having noticed any such defect on her way to the opera house, on the return journey from which she was injured.

All that she testifies to is that prior to the accident she had noticed that the boards were loose; that sometimes someone would kick them out and then again you come along and they are all in. Sometimes one way and sometimes the other way. I never knew which ones were loose and which ones were not. A good many were loose. I noticed it. Sometimes they were in and sometimes not. I mean by that that I have seen from my window where someone was hauling a cart of water or a wheelbarrow, and a plank would be out, and they would lay them in, and then again someone would kick and stumble on the way and would throw them out. At times I saw holes there. The reason was those planks were out. I passed over the sidewalk after the 14th, on the evening of the accident, which was on the 18th. I had been to the picture show. The accident was about 10 o'clock. I fell in a hole in the sidewalk, that is the only sidewalk there was. I think we were carrying on a continuous conversation. We weren't talking about the sidewalk. At the time I was walking along I didn't notice any of the holes I am speaking of at the place of the accident. That is all I know about it. There was a hole there. I know it was a big hole as I was

right down in it. Three planks were gone. I knew then it was big enough when I was in it.

Q. And you are quite certain there were not any holes before that that you came to?

A. I didn't have any trouble about that and I don't think so. Before then I knew that there were holes in the walk from time to time. On the night of the accident I was walking along and the first thing I knew I had fallen. It was pretty dark and the light was pretty poor. The light at the corner was out. The light was back of me about a block and one half away or that block away and across the street behind.

Q. What was the condition of the street ahead of you? Could you see the sidewalk clearly?

A. No. I couldn't. I could not have seen the sidewalk. Perhaps if I was going along examining it, maybe I could. I could see the general line where the sidewalk was. Sometimes the boards would be a little higher than the others, and sometimes one lapped over onto another.

Q. Did you notice at that time whether there were any boards loose on the sidewalk?

A. I did not. There were about two or three blocks to the picture show. I knew it was a poor walk. The hole was about 5 inches.

Q. Now you had noticed it often, hadn't you? Did you testify that you had seen people haul water carts along there and kick those planks out and then again they would be placed back?

A. Of course watching those people. They would be some distance from my window.

Q. And you knew those locations of those places in the sidewalk?

A. Yes, sir.

Q. Now when you came along there that night you had in mind the condition of this sidewalk?

A. I don't remember whether I had it just in mind.

Q. Did you say that you looked out for the bad places in the sidewalk, that you could look out for bad places in the sidewalk better alone than walking with someone?

A. Well, of course, in other parts of the walk, not just speaking of these, there would be places where one would pick her way along, but I don't remember just at this time.

Q. You said you were scared when you stepped into it?

A. I was scared after I stepped into it.

Q. Hadn't your husband been taking you previous to this?

A. Yes, but he didn't have to help me along. Along these poor places each of us walked independently.

It is true that at the time of the accident she was talking to her husband and did not notice the pitfall that was before her. It is true that there is no rule of law that goes so far as to excuse the traveler from making such a use of his faculties as to preserve him from danger and to protect himself therefrom. "He cannot rely so far on the presumption that the municipal authorities have done their duty and have kept the highway in repair, as to go blindly forward without looking ahead and taking the chances of getting along safely." See Jackson v. Jamestown, 33 N. D. 596, 157 N. W. 475; 5 Thomp. Neg. § 6424.

It would seem, however, that a person injured by a defect or obstruction in a street does all that the law requires of him, when he observes ordinary or reasonable care, and it can hardly be expected of a person that he should keep his eyes glued to the sidewalk all of the time that he is walking thereon. See 13 R.C.L. 474. The fact that one knows that in the past some boards have been absent or loose in the sidewalk does not imply knowledge as to the exact location of all of them, or that they are absent at any particular place or time.

Nor does the fact that the plaintiff was at the time of the accident talking to her husband prove contributory negligence as a matter of law. The question is one of ordinary and reasonable care, and we can hardly say that the proof of such care was positively negatived in this case before us. All that is necessary is that one should walk with his eyes open, observing his usual course and in the usual manner. Earl v. Cedar Rapids, 126 Iowa, 361, 106 Am. St. Rep. 361, 102 N. W. 140.

This is not a case such as was presented to us in the case of Jackson v. Jamestown, supra, for in that case the evidence disclosed that the plaintiff knew or should have known of the defect, that he paused in front of it after he saw or should have seen it, and then stepped backwards into it.

Nor is there any merit in the contention of appellant that there is

no evidence that the miscarriage was occasioned by the accident in question, and that the verdict is based upon the guesses of the plaintiff alone. It is true that in answer to the question, "Then in medical science it is only a conjecture as to what the cause is?" Dr. Thompson answered: "Unless the patient knows absolutely, but as a rule it is. Nine times out of ten it is. The person does not know what the cause is. They think they know and the chances are they do, but it is guesswork at that." This testimony, however, is by no means conclusive, and in itself admits that the patient's information may be true and that the patient may know.

Opposed to it is the direct testimony of the plaintiff that she was hurt and jarred and felt sick and nervous immediately after the accident, and that soon after she reached home the amniotic fluid commenced to flow, that she never recovered from the shock, and that on the Fourth of July her child was prematurely born.

Dr. O'Hare also testifies positively that accidents such as that encountered very frequently occasion miscarriages. It is also to be remembered that on the other medical features of the case the testimony of Dr. Thompson was disputed by Dr. O'Hare.

The judgment of the District Court is affirmed.

GRACE, J. I concur in the result.