HERBERT WHITSON, Respondent, v. DR. H. J. HILLIS, Appellant.

(215 N. W. 480.)

**Physicians and surgeons — failure to employ available and well-known means of diagnosis — negligence.**

> Ordinarily, in a malpractice action, the plaintiff is required to prove by expert testimony the standard of skill possessed by physicians and surgeons in the same general line of practice as the defendant and practicing in similar localities, but it is *held*, for reasons stated in the opinion, that the failure to employ available and well-known means of diagnosis, coupled with the failure to locate a known fracture and the continued treatment for a fracture at a place where there was no fracture, is evidence of negligence.

Opinion filed April 22, 1927. On reargument October 13, 1927.

Physicians and Surgeons, 30 Cyc. p. 1575 n. 60; p. 1587 n. 78; p. 1588 n. 83.

Appeal from the District Court of Ward County, *Lowe,* J.
Affirmed.
*L. J. Palda, Jr., C. E. Brace,* and *Robert W. Palda,* for appellant.

Annotation.—(1) On liability of physician for wrong diagnosis of case resulting from want of skill and care, see 21 R. C. L. 388; 3 R. C. L. Supp. 1152; 5 R. C. L. Supp. 1157.

"The law is now well settled that the physician owes to his patient the duty to exercise reasonable and ordinary care, diligence and skill such as are ordinarily possessed by physicians practicing in similar localities in the same general line of practice." Hanson v. Thelan, 42 N. D. 617, 173 N. W. 457.

"No physician or surgeon is held to a guaranty of results; but he is held to the exercise of the skill and learning of the profession generally in the community in which he practices." Baker v. Langan, 165 Iowa, 346, 145 N. W. 513.

"Upon questions involving a highly specialized art, with respect to which a layman can have no knowledge at all, the court and jury must be dependent on expert evidence, and when there is no such evidence to support an allegation depending upon such a question, there is nothing to justify submitting the issue to the jury." Ewing v. Goode (S. C.) 78 Fed. 442.

"What is proper and usual practice in examining and treating an injury, and what constitutes ordinary care by a physician, can only be shown by expert testimony." McGraw v. Kerr, 23 Colo. App. 163, 128 Pac. 870.

"In the absence of evidence to the contrary, the law will presume the exercise of a reasonable degree of care and skill by a physician and surgeon." Schmidt v. Stone, 50 N. D. 91, 194 N. W. 917; Houghton v. Dickson, 29 Cal. App. 321, 155 Pac. 128.

"The result is not in itself evidence of negligence, nor does the mere failure to cure raise a presumption of negligence." Thorpe v. Talbot (Iowa) 196 N. W. 716.

*E. R. Sinkler* and *G. O. Brekke,* for respondent.

BIRDZELL, Ch. J. This is an action to recover damages for alleged malpractice. In the trial court the plaintiff had judgment and the defendant appeals. In the complaint it is alleged that on the first day of January, 1925, the plaintiff sustained a fracture of his right leg just above the ankle joint, and the defendant was called to attend him. The charges of negligence are that in attempting to diagnose and treat the fracture the plaintiff negligently and carelessly failed to correctly diagnose and ascertain the nature of the injury; that he diagnosed the injury as a fracture of the smaller bone of the right leg about 3 inches

above the ankle joint and a break in the larger bone about 3 inches above the "diagnosed" break in the smaller bone; whereas in truth and in fact there was no break in the large bone at the point where the defendant diagnosed the same to be, but that there was a break in this bone near the ankle joint which the defendant negligently and carelessly failed to ascertain and discover; that the defendant negligently failed to place the bones in their proper position to reduce said fracture; that he had negligently and carelessly permitted the bones to unite in an improper position and that he negligently failed to use proper appliances for the purpose of reducing the fracture and to take proper means to discover the nature of the injury, negligently allowing the fracture to heal and the plaintiff's foot to become in an everted position.

Upon the trial the plaintiff sought to prove these allegations by placing the defendant on the witness stand for cross-examination and by the testimony of the plaintiff and his father and mother. Inasmuch as the principal assignment of error urged upon the appeal is the insufficiency of the evidence, it will be necessary to briefly summarize the evidence on the vital points. It seems that on the 1st of January, 1925, the plaintiff sustained an injury to his right leg through the falling of a horse he was riding. He was taken to his home near Berthold and the defendant, a practicing physician of Berthold, who was at the time in Minot, was called by telephone to attend him. The defendant advised some emergency treatment and reached the plaintiff's home at about 3:30 in the afternoon. On the trial, when called for cross-examination, the defendant testified that he made an examination of the right leg, found it to be crooked and found that there was a great deal of swelling, and on handling it or manipulating it he could feel that there was a fracture. He discovered that both bones of the leg were fractured, the small bone being fractured about 4 inches above the ankle joint and the larger bone, he thought, about 6 inches above the ankle, as there was swelling there; that it felt like an injury to the bone but no displacement, but he told those present that there was a fracture at that place. He diagnosed it as a fracture. There was some talk with reference to an X-ray picture and, as nearly as he could recall, after manipulating the leg he suggested that an X-ray picture was apparently not necessary on account of the fact that the leg

came so straight, but if they wanted one it was all right with him, he would be glad to have one. He found the two fractures and swelling and injury to the soft parts. He found no fracture in the lower end of the tibia or large bone. He examined the ankle but on account of the swelling he could not feel a fracture. He straightened out the leg and put splints on it for the purpose of reducing the fractures that he had diagnosed. In addition to these he used bandages and adhesive tape. He used the splints and bandages to hold the bones and joint the way he put them, but at the time he had no knowledge of a fracture of the tibia near the ankle joint and did not use them for the purpose of reducing such fracture. The plaintiff's leg was left in the splints until the 7th of January. At that time the swelling had gone down partially and the leg was not crooked. He then applied other splints but not for the purpose of reducing any fracture of the tibia near the ankle joint as he had not discovered it. He treated the plaintiff again on the 11th of January, taking off the splints, bandages and padding and replacing them. At that time the leg was straight. It, he said, "remained straight as long as he did not walk upon it." It "remained straight until the first time he was to the office which I think was the 4th of March. It was straight until he stepped upon it and turned it out." When the foot turned out on the 4th of March the defendant thought the difficulty was in the ankle. He adjusted adhesive bandages to correct that and told the plaintiff not to use the foot. At that time it was still swollen. He had not yet discovered that there was a fracture at the lower end of the tibia. He first discovered that some time between the 16th and the 27th of March when he saw an X-ray picture. The broken ends of the bone were not in apposition at that time. The defendant admitted that he had incorrectly diagnosed the condition of the bone 6 inches from the ankle when he diagnosed it as fractured at that point. There was an injury at that point but not a fracture. In answer to questions the witness stated that to reduce a fracture it is necessary and proper practice to exert pressure and manipulate the bones to get them in proper place and then put something on to keep them in place.

The remaining facts, as gathered from the testimony, may be briefly summarized. The plaintiff went to another doctor, had X-ray pictures taken and it was discovered that the lower end of the tibia

was broken near the ankle joint; that there had been no union; that some callous had formed which would preclude a union, even though the broken parts were placed in apposition, until something further was done by way of scraping off the callous and stimulating the efforts of nature to effect a union. This was attempted through an operation performed by another doctor in which there was an effort to induce a union by making an opening near the fracture, scraping the ends of the bones and nailing the detached portion on to the main portion, which operation was not successful.

The testimony of the father and mother of the plaintiff is to the effect that when the doctor first came to their home the mother suggested that she had the plaintiff ready to take to Minot for the purpose of having taken an X-ray picture of the injured leg; but that the defendant assured them that such was apparently unnecessary.

The plaintiff produced no expert witnesses to testify concerning the degree of skill required to detect a fracture of the character of that shown to have existed in this case and which was not discovered by the defendant; nor to testify as to whether or not the exercise of a proper degree of care and skill in the circumstances, considering the locality and the facilities available, may require the taking of an X-ray picture as an aid to diagnosis. Upon this appeal the main reliance of the defendant is upon the failure of the plaintiff to produce expert testimony of this character.

It is urged that, inasmuch as the defendant is sought to be charged with the failure to exercise that degree of diligence and skill which is ordinarily possessed by physicians and surgeons practicing in similar localities and in the same general line of practice as the defendant (Hanson v. Thelan, 42 N. D. 617, 173 N. W. 457), it was improper to submit the cause to the jury without expert testimony to establish this standard, and authorities are cited to substantiate the contention, among which are the following: Houghton v. Dickson, 29 Cal. App. 321, 155 Pac. 128; McGraw v. Kerr, 23 Colo. App. 163, 128 Pac. 870; Miller v. Toles, 183 Mich. 252, L.R.A.1915C, 595, 150 N. W. 118; Berkholz v. Benepe, 153 Minn. 335, 190 N. W. 800; Lorenz v. Lerche, 157 Minn. 437, 196 N. W. 564; Tady v. Warta, 111 Neb. 521, 196 N. W. 901.

There is no question but that the general rule is as contended by the

appellant, but we are of the opinion that, where, as here, the defendant admits that he did not discover the fracture, and where he, being the first physician called, had the complete history of the case showing injuries that might well indicate one or more fractures at places other than those regarded by him as the principal locations of injury, and where there was willingness on the part of those who called him professionally to take the plaintiff to a place where an X-ray picture could be had to better disclose the extent of the injuries, there is substantial evidence from which the jury could say that the defendant failed to exercise that degree of care in the diagnosis and treatment of the plaintiff's injuries which is to be expected of a physician, regardless of any particular standard. The jury must be presumed to have some knowledge concerning matters upon which physicians may have superior knowledge. They have general knowledge of the efficacy of the X-ray and of its desirability as an aid to diagnosis in cases of bone and joint injuries. They have general knowledge of the laws of physics and may be presumed to know something of the facility with which the relation between a supposedly broken bone and a turning out of a dependent extremity can be determined, at least after swelling has somewhat subsided. In the absence of testimony explaining why an X-ray picture was not desirable in the circumstances, and how the failure to have it taken may be consistent with the exercise of a proper degree of care on the part of the physician, the jury is warranted, in our opinion, in concluding from their general knowledge of the use of the X-ray in such cases that the failure to employ it when available, as it must be assumed to have been here, was negligence. Likewise, we have here the unexplained evidence showing a more or less continuous treatment for a fracture of the tibia some 6 inches above the ankle joint from the 1st of January until March, coupled with the admission on the part of the defendant that the bone was not broken at that point and his failure to discover it until March. Although the failure to discover the actual fracture at the time and while the injury was fresh might well be accounted for consistently with the exercise of a proper degree of professional skill, leaving the question of the X-ray to one side, the unexplained failure to discover the fracture during the period of two months, and the continued treatment for a fracture that did not exist for so long a period of time, may well be regarded as inconsistent with

the exercise of due care and skill measured according to any supposed professional standard. In other words, from this evidence, unexplained, the jury may draw an inference, based upon their common knowledge, that physicians, in constant attendance and in the exercise of due care, would not treat a patient for this period of time for a fracture that did not exist and would not fail for so long a period to make such examinations and tests as would locate the seat of the trouble elsewhere. We are of the opinion that there was sufficient evidence in the instant case to form a question of fact for the jury and that the judgment appealed from must be affirmed.

BURKE, NUESSLE, CHRISTIANSON, and BURR, JJ., concur.

BIRDZELL, Ch. J. (On rehearing.) This cause has been reargued. It has been strongly urged upon the reargument that the testimony of the defendant, given under cross-examination when called by the plaintiff, tends to show that the treatment given by him was proper treatment for the actual injury, including the fracture at the lower end of the tibia, although such fracture was not known to the doctor. In testifying with reference to the placing of braces or splints about the injured parts approximately a week after the injury, and in response to the query as to what they were placed there for, the defendant said: "By that time the swelling had gone out partially and that was placed there in order that the foot would be held in this position, a flexed position, with the sole inverted according to the way we had it packed, the idea being that where there is a fracture near the ankle the ligaments of the ankle may be involved, and in that case we put the ankle up so that in case there is any stiffness there or rupture of the ligaments or a small piece of the tibia peeled off the ankle will still be in a position as good as we can get it and get a good leg." When in March the defendant discovered that the foot turned out he thought the difficulty was in the ankle and he then placed wide strips of adhesive tape to hold the foot in place and to hold the ankle in a normal position. The fracture was not discovered at this time, but the defendant testified that, if there was a fracture, the bones would go in apposition the way he fixed it; that they were not far apart; "they could not be far apart the way I put them." (The doctor further admits that he

did not place the bones in apposition at any time and that they were not in apposition later on when he saw the X-ray picture and was for the first time made aware of the fracture.) It is earnestly argued that the burden which rests upon the plaintiff to make out a prima facie case requires him to establish his allegations of negligence by proper expert testimony, and that not only has he failed to sustain this burden but that he has adduced the evidence referred to above which tends to show that the treatment given was proper or such as would have been given had the fracture been more promptly discovered.

It is, of course, elementary that the plaintiff has the burden of proof. He must adduce evidence from which reasonable men may be warranted in drawing an inference of negligence. If the evidence otherwise in the case is sufficient to warrant this inference, it is not, in our opinion, appreciably weakened by the testimony of the doctor. To regard that testimony as affirmative evidence of the propriety of the treatment requires a strained construction. It appears to us rather as a feeble attempt to gloss over a palpable omission. At most it amounts to saying that "suspecting the injury involved the ankle, which indeed was swollen, I bound it up, and this is what should have been done for a fracture." Conceding that this would furnish a sufficient excuse for the failure to treat the fracture during the early period of the injury, there is nothing to explain the failure of the doctor to make sure that any such possible fracture was healed before he advised the patient in February that he might use the leg, or his failure to ascertain the condition before it was discovered by others and made known to him.

We realize the possibility of a decision being misunderstood which supports a recovery in a malpractice case without expert testimony to establish negligence in diagnosis or treatment, and, to guard against possible misconstructions of the original and this opinion, we deem it proper to say that, as we view the matter, malpractice is merely a branch of the law of negligence. If there becomes involved in such a case a question of negligence that can be determined without resort to expert testimony, such testimony is not essential. Some facts in connection with medical science are so well known as not to require expert testimony to place them before a jury. We must credit common intelligence with knowing that there is a more reliable method than guess-

work to determine the existence of a bone fracture; that fractured bones require to be placed in apposition in order to reunite; and that, if the process of knitting be too long delayed, the efforts of nature to effect a union will be thwarted and more drastic measures will be required to repair the injury.

In our opinion the evidence is sufficient to support the verdict, and we adhere to the former opinion.

NUESSLE, CHRISTIANSON, BURKE, and BURR, JJ., concur.