Arthur W. STOKES, Plaintiff and Appellant,

v.

Walter C. DAILEY, Defendant and Respondent.

No. 7692.

Supreme Court of North Dakota.

Oct. 18, 1957.

Rehearing Denied Nov. 15, 1957.

Forks, and the defendant is a licensed and practicing physician in that city. The action is based upon negligence, want of skill or want of due care on the part of the defendant. Defendant denies any negligence and asserts that he performed services for the plaintiff according to his best knowledge and ability and that in so doing he "conformed to the standard of practice prevailing in the vicinity and area surrounding Grand Forks, North Dakota." He further alleges that if the plaintiff sustained any loss, injury or damage, the same was due to his own carelessness, negligence and contributory negligence, and asked that the plaintiff's action be dismissed.

This case was tried to a jury. At the conclusion of the presentation of the plaintiff's evidence, the defendant made a lengthy motion in nine parts that the court direct the jury to return a verdict of dismissal of the action. Without setting forth the entire motion, we will refer to those parts of it that are pertinent to the issues involved. The motion generally stated that the plaintiff had wholly failed to prove facts to constitute a cause of action for alleged malpractice. It also dealt with matters that the defendant claimed must be proven in order to state a cause of action for malpractice. We will quote those parts of the motion that go directly to the issue before us.

"(6) That there is no evidence whatsoever that the defendant failed to exercise the ordinary care, diligence and skill in treating the plaintiff that is ordinarily possessed and exercised by general medical practitioners in the Grand Forks, North Dakota area. That there is a complete dearth of medical testimony, and that this is the kind of a case that medical testimony is absolutely necessary to set up a standard of medical practice and care which is to be used in judging Dr. Dailey, the defendant in this case; and in the absence of that medical evidence to show that standard of care or a breach of it, there is a complete fail-

Lyche & Lyche, Grand Forks, for appellant.

Nilles, Oehlert & Nilles, Fargo, for respondent.

JOHNSON, Judge.

This is an action to recover damages for alleged malpractice. Plaintiff is a licensed and practicing attorney in the city of Grand

ure of proof of any alleged malpractice in this case.

"(7) That the evidence is undisputed by plaintiff's own witnesses, and particularly Dr. Lynch, that the standard of medical practice existing in the Grand Forks area does not require giving a patch skin test by a general practitioner, or even by a specialist in dermatology, before prescribing the use of histadyl and surfacaine in treating the dermatitis or eczemous condition with which the plaintiff was afflicted during the time of the alleged act of malpractice. The evidence of Dr. Lynch is specific, plain and undisputed to such effect, that even in the case of a specialist in dermatology, patch skin tests are not required under the rules, and that this is one of the specific charges of negligence in the complaint, and that such charge has not been proved; in fact, the evidence is directly to the contrary."

On the basis of this motion the trial court determined that the plaintiff had failed in his proof and directed the jury to return a verdict of dismissal of the plaintiff's action. The jury accordingly rendered such a verdict.

Plaintiff appealed from the judgment of dismissal asserting that the court erred in directing a verdict in favor of the defendant and in ordering judgment of dismissal of the plaintiff's cause of action. At the time the defendant made his motion for a directed verdict of dismissal of the plaintiff's cause of action, plaintiff's counsel stated: "I'd like the record to show that we resist the motion."

Section 28-1509, NDRC 1953 Supp. provides:

"Motion for Directed Verdict. When at the close of the testimony any party to the action moves the court to direct a verdict in his favor, and the adverse party objects thereto, such motion shall be denied and the court shall submit to the jury such issue or issues, within the pleadings on which any evidence has been taken, as either or any party to the action shall request."

The sole and only issue before us is whether or not plaintiff presented evidence which constituted a prima facie case, which he was entitled to have the jury consider, and whether under the evidence it was prejudicial error to grant motion for a directed verdict of dismissal of the plaintiff's action without submitting the matter to the jury as required by the statute.

This action arises, as shown by the record, out of the following factual situation: Arthur W. Stokes, a licensed and practicing attorney in the city of Grand Forks for a period of about 21 years, consulted the defendant, Dr. Walter C. Dailey in April, 1952, about a skin affliction under his armpits that he had had for about 14 or 15 years. The plaintiff had known the defendant about 15 years and had social as well as professional contact with him. The defendant first examined the plaintiff on April 22, 1952. The defendant had practiced his profession in Grand Forks for approximately 16 years. When the plaintiff consulted the defendant in April 1952, the defendant prescribed drugs for his skin affliction known as "histadyl and surfacaine" made up in the form of a cream-like ointment. This prescription was given to treat the plaintiff's dermatitis or eczema existing under his armpits. The plaintiff made no report to the defendant concerning the use of this prescription from April 22, 1952, to December 14, 1953. On that date he had an appointment for an examination and while there asked the defendant to look at his armpits.

After procuring the prescription in April 1952 he used it only once. It created a burning sensation on the afflicted parts of his skin, so he abandoned its use and went back to using remedies that he had used in the past such as Stag cologne, pragmatar, and rubbing alcohol. In November 1953 he ran out of pragmatar, so he again applied the contents of the prescription first obtained from the defendant in April 1952

to his armpits. He did not know the nature of the prescription. After so doing, he noted a redness which instead of being a small spot under the arm, had increased and gone down the arm partly onto the muscle. So he again threw the prescription back into the medicine cabinet and immediately went out and bought a new supply of pragmatar. He bought this on November 26, 1953.

On December 14, 1953, the plaintiff says he arrived at the doctor's office shortly before noon; that the doctor spoke to him and said that he did not have time to give a physical examination so the plaintiff states that he asked the doctor to look at his arms, that they were bothering him. He does not remember whether he had his shirt off or on, but he does remember that he was in the office only very briefly. The doctor said that he would give him a prescription. When he said that the plaintiff claims that he said, "don't give me the same stuff you gave me before, because that drives my skin wild." The defendant denied that the plaintiff ever made such a statement. The defendant, however, gave the plaintiff another prescription which was also "histadyl and surfacaine". The prescription contained no identification and the plaintiff used it two times, according to instructions. The first application of the so-called second prescription was used at noon on December 14, 1953, and again during the evening of that day. The plaintiff claims that he slept very little that night as the condition of his arms was bad. The plaintiff then called the defendant, went down to see him at his office where he says he was given a hypo and sent home to soak his arms in a saline solution. The defendant stopped to see the plaintiff during the day, and instructed him to come down to the office in the afternoon; that he should not drive his car. On the night of December 15, 1953, the plaintiff says that he woke up ill, went to the bathroom and seated himself on a low stool and that after doing so he lost consciousness. He was taken to the Deaconess Hospital on the morning of December 16th at 3:30 a. m.,

where he remained until December 25th. Then he again re-entered the hospital on January 1, 1954, and remained there until January 7, 1954. On or about December 19, 1953, the defendant under whose care the plaintiff was being treated in the hospital, called in Dr. Grinnell, a Grand Forks specialist in skin diseases, and consulted him concerning the treatment of the plaintiff's affliction. Thereafter both doctors treated the plaintiff's skin affliction.

During his stay in the hospital the plaintiff claims that he heard Dr. Dailey, the defendant, tell Dr. Grinnell, that the prescription he used for the plaintiff's affliction was histadyl and surfacaine, and that he was amazed "because such an explosion" had happened and that it did not happen in 1 out of 20 cases. Plaintiff said that this was the first time he had heard the name of the prescription. Dr. Dailey denies that any such conversation ever took place. The second prescription was the same type of medication as was originally given to the plaintiff, and which he says that he warned the defendant not to give him.

The defendant testified that the plaintiff had what is commonly known as "contact dermatitis." This he defined as "dermatitis which is brought on by a sensitive skin coming in contact with some substance to which it is sensitive, such as poison ivy is a contact dermatitis." He further explains that contact dermatitis to a certain extent was a form of allergy. From the time the plaintiff first consulted the defendant in April 1952, to the end of the period when he treated him for his skin affliction, the defendant did not learn that the plaintiff was allergic to anything and explains that patients who are allergic are quite often allergic to many things.

Plaintiff says that he asked Dr. Grinnell on or about January 6, 1954, as he did not seem to be improving, to get him a specialist in St. Paul and make arrangements to send him there. The plaintiff left Grand Forks on January 7, 1954, to consult one Dr. Francis Lynch in St. Paul, a

specialist in skin diseases. He entered the Miller Hospital in St. Paul on January 7, 1954, where he was treated by Dr. Lynch until January 21, 1954. He claims that he was discharged from the Miller Hospital on the condition that he would leave for Florida. Dr. Lynch testified that he suggested to the plaintiff that he take a trip to Florida. Plaintiff went back to Grand Forks and on January 28, 1954, and in the company of his wife, left by car for Florida. He saw Dr. Lynch again on March 10 or 11, 1954, on his way back from Florida. The plaintiff returned to work March 15, 1954.

In August 1956, plaintiff asked Dr. Lynch to make what is known as a "patch test" on him with the contents of the so-called second prescription, being histadyl and surfacaine. Dr. Lynch conducted the patch test with the ointment contained in the second prescription and ascertained that the plaintiff was sensitive to surfacaine. He testified that it was his opinion that the major portion of the plaintiff's disability at the time he first saw him was the result of an allergic reaction to an ointment which contained surfacaine.

Dr. Lynch testified that the plaintiff brought with him a tube of ointment which he suspected caused the allergic condition in January 1954. The doctor further testified that the hospitalization and disability of the plaintiff were "due principally to the allergic reaction." On cross-examination he stated "sometimes the presence of an allergic reaction can be reasoned from the history and from observation of the eruption and sometimes patch tests are necessary." He further testified that cortisone is given and is a recognized treatment for allergic reactions. But he did state that vioform ointment, if used could have been a causative factor in the allergic condition of the plaintiff and that pyribenzamine or pragmatar could have also been a factor. He did, however, state that "I do not believe that a dermatologist would prescribe histadyl and surfacaine without having made an examination either at that time or sometime shortly before that time."

Dr. Lynch defined "contact dermatitis" as an inflammatory reaction of the skin, resembling eczema, or in the general family of eczema, resulting from exposure of the skin to an irritant or substance capable of producing an allergic reaction. He also stated that "dermatitis venenata" is synonymous with contact dermatitis. It is a weeping dermatitis.

The defendant testified that prior to prescribing for the plaintiff on December 14, 1953, he examined him, and took a history from him by asking questions. But he produced only a card with a notation of the plaintiff's call, the date, and stated: "Seen in office—Weeping dermatitis both Axilla. RX Pyribenzamine & Hyst & Surf." The plaintiff denies that he asked him anything about the cause or history of his affliction. He also claims that he was not asked how the previous prescription had reacted. He claims that the defendant did not tell him how to use the prescription.

With the record of the evidence as stated, was it error for the trial court to direct a verdict of dismissal of the plaintiff's action?

It is to be noted that the court may direct a verdict in favor of the adverse party if the other party to the action does not object thereto, but when the other party objects thereto, "such motion shall be denied and the court shall submit to the jury such issue or issues, within the pleadings on which any evidence has been taken, as either or any party to the action shall request."

It is argued that Mr. Lyche's statement, "I'd like the record to show that we resist the motion" does not constitute an objection thereto, and that in any event that he did not request the court to submit to the jury the issues within the pleadings which he felt should be submitted to the jury. We believe that Mr. Lyche's statement amounted to an objection within the terms of the statute to the granting of the motion. We further believe that unless the

adverse party or parties specify the issue or issues within the pleadings on which evidence has been taken, that all the issues upon which evidence has been presented are to be submitted to the jury under the terms of the statute.

In the case of State ex rel. Brazerol v. Yellow Cab Co., 62 N.D. 733, 245 N.W. 382, 384, this court held that a motion for a directed verdict should not be granted unless the moving party is entitled to judgment as a matter of law upon the merits as appears from the evidence. In that connection the court said:

"Such motion will not be granted where there is an issue for the jury to pass upon under the evidence (Zink v. Lahart, 16 N.D. 56, 110 N.W. 931; State Bank of Maxbass v. Hurley Farmers Elevator Co., 33 N.D. 272, 156 N.W. 921), but, in determining the validity of the ruling, the *evidence must be considered in the light most favorable to the party against whom the motion is made.* (Warnken v. Langdon Mercantile Co., 8 N.D. 243, 77 N.W. 1000; John Miller Co. v. Klovstad, 14 N.D. 435, 105 N.W. 164; Schantz v. Northern Pac. R. Co., 42 N.D. 377, 173 N.W. 556; Chubb v. Baldwin Piano Co., 54 N.D. 189, 208 N.W. 975). (Emphasis supplied.)

"Negligence, whether contributory or primary, is a question of fact, never of law, unless the facts from which the inference can be drawn admits of but one conclusion. Cameron v. Great Northern R. Co., 8 N.D. 124, 77 N.W. 1016; Pyke v. City of Jamestown, 15 N.D. 157, 107 N.W. 359; Krause v. City of Wilton, 40 N.D. 11, 168 N.W. 172. The question of negligence and proximate cause become a question of law only when the evidence is such that different minds cannot reasonably draw different conclusions either as to the facts or as to the deductions from the facts. Dougherty v. Davis, 48 N.D.

883, 187 N.W. 616; Martin v. Parkins, 55 N.D. 339, 213 N.W. 574."

In a jury case, the weight of the evidence and the credibility of the witnesses are for the jury. Thompson v. Hannah Farmers Co-op. Elevator Co., N.D., 79 N.W.2d 31. Where the evidence is conflicting on material issues of fact the case is for the jury. Severtson v. Northern Pac. Ry. Co., 32 N.D. 200, 155 N.W. 11; Dahl v. North American Creameries, N.D., 61 N.W.2d 916.

While a jury may not resort to conjecture or surmise or be permitted to fancy or imagine situations and circumstances which do not appear in the evidence, a jury may consider facts and circumstances proved, and make such just and reasonable inferences therefrom as the guarded judgment of reasonable men would ordinarily make under like circumstances. They might find any fact proven which they believe might rightfully and reasonably be inferred from the evidence in the case, but such inferences should be logical and natural results drawn from the evidence by proper deduction. Scheid v. Cavanagh, 65 N.D. 596, 260 N.W. 619.

It is earnestly argued that the burden rests upon the plaintiff to make out a prima facie case and that such burden requires him to establish his allegations of negligence by proper expert testimony, and that he has not only failed to sustain this burden but that he has introduced evidence by his own medical witness, Dr. Lynch, which tends to show that the treatment given was proper.

It is, of course, elementary that the plaintiff has the burden of proof. He must adduce evidence from which reasonable men may be warranted in drawing an inference of negligence, or want of due care. If the evidence otherwise in the case is sufficient to warrant this inference, it is not, in our opinion, appreciably weakened by the testimony of the doctor called as a medical witness by the plaintiff. He

did not know, nor did he testify, as to general practice in the Grand Forks locality.

The question for determination by the jury was whether or not the defendant was negligent or failed to use due care in the treatment of the plaintiff. In the case of Hunder v. Rindlaub, 61 N.D. 389, 237 N.W. 915, an action involving damages for the alleged negligence in the treatment of an injured eye, it was held that the questions of negligence, proximate cause, and contributory negligence were for the jury.

It is strenuously contended that the plaintiff cannot establish a cause of action for alleged malpractice without introducing evidence of a medical expert to show the standard of care and skill in the Grand Forks locality involving the treatment of the particular affliction with which the plaintiff was affected. While that is ordinarily true we do not have that situation before us in the case at bar. Here the negligence or want of care of the defendant, if any, is based on conflicting testimony of the parties. The alleged negligence or want of care of the defendant consists of his failure to heed the warning of the plaintiff, if in fact such warning was given, by giving him the same prescription that the defendant had previously given him and which the plaintiff claims he told the defendant he did not want as it "drives my skin wild". The negligence or want of care of the defendant, if any, is further based upon his failure to find out from the plaintiff what he had given him for his skin affliction in April 1952 if he did not remember, or if he did remember what he gave the plaintiff, in failing to inquire as to what results were obtained, the plaintiff's warning indicating that the first prescription was injurious to his skin condition. If the warning was given, it was the defendant's duty to ascertain from the plaintiff how he had used the prescription and to generally obtain information from him that would constitute a basis for determining what medication or treatment the defendant should prescribe. This is particu-

larly true as the defendant knew that a certain percentage of individuals are allergic to histadyl and surfacaine. If the plaintiff gave the warning he claims, ordinary prudence would prompt the defendant to inquire into the alleged injurious or harmful results from the use of the prescription. This the plaintiff claims the defendant did not do. On the other hand the defendant denies that the warning was given and insists that he did ask the plaintiff some questions before giving the second prescription.

Whether the warning was given or not, was a question for the jury. The credibility of the witnesses was also a jury question. The conflict in the evidence in this case as to the alleged negligence or want of care of the defendant is not in any way due to expert medical testimony. The alleged negligence of the defendant is based upon nontechnical matters.

The facts show that the plaintiff was allergic to surfacaine. The patch test conducted by Dr. Lynch established that fact. The causation of the plaintiff's aggravated eczemous condition for which he was hospitalized has been established by expert testimony and the only question for the jury to determine in this case is whether or not the plaintiff warned the defendant as he claimed he did or whether the defendant, without ascertaining from the plaintiff the history of the reaction caused by the application of the first prescription, was negligent or failed to exercise due care in giving him another prescription of the same type of medication. This court has said in Whitson v. Hillis, 55 N.D. 797, 804, 215 N. W. 480, 483:

> "If there becomes involved in such a case (a malpractice action) a question of negligence, that can be determined without resort to expert testimony, such testimony is not essential."

In considering the validity of the ruling on the motion for the directed verdict of dismissal we must consider the evi-

dence in the light most favorable to the party against whom the motion was made. We cannot say under the facts of this case that as a matter of law the plaintiff has failed to make out a prima facie case of negligence or that there are no inferences of negligence to be drawn from the evidence presented. The plaintiff had presented a prima facie case against the defendant. When we further consider that negligence, proximate cause, and contributory negligence in a malpractice action are primarily jury questions, the plaintiff under the evidence was entitled to have the facts submitted to the jury. Viewing the whole record and the conflicts in the evidence it was prejudicial error for the trial court to direct a verdict of dismissal at the end of the plaintiff's case. It follows that a new trial must be granted.

GRIMSON, C. J., and SATHRE, MORRIS and BURKE, JJ., concur.