**STATE AUTOMOBILE AND CASUALTY UNDERWRITERS, a corporation, Plaintiff and Appellant,**

v.

**Bruce W. SKJONSBY and C. J. Skjonsby, a partnership, d. b. a. Skjonsby Truck Lines, Defendants and Respondents.**

**No. 8266.**

Supreme Court of North Dakota.

April 27, 1966.

Wattam, Vogel, Vogel, Bright & Peterson, Fargo, for plaintiff and appellant.

Nilles, Oehlert & Nilles, Fargo, for defendants and respondents.

ERICKSTAD, Judge.

This is an appeal by the plaintiff, State Automobile & Casualty Underwriters, a corporation, from a judgment entered November 10, 1964, in Cass County District Court.

At the close of the plaintiff's case the defendants made a motion for a directed verdict and in the alternative for a dismissal. The trial court ordered judgment of dismissal of the complaint, and it is from the judgment entered pursuant to this order that the plaintiff appeals.

We shall hereafter refer to the plaintiff as State Auto.

The complaint alleged that the plaintiff insured the defendants under a policy of insurance which included a public liability and property damage endorsement, issued in compliance with § 49–18–13, N.D.C.C., in the form prescribed by the North Dakota Public Service Commission; that on or about October 3, 1962, a 1960 Diamond T diesel tractor owned by the defendants and being operated by their employee, Elvin O. Steinhous, collided with a 1947 Chevrolet tank truck owned by Fritz J. Elverum

and being operated by his employee Martin Kloster at a certain intersection in Fargo, North Dakota, and that shortly thereafter and at the same intersection the said tractor, while operated by the said Elvin O. Steinhous, collided with a 1962 Ford station wagon owned by the Fargo Police Department; that both of these accidents were caused solely by the negligence of the defendants' employee, who was then engaged in carrying freight for the defendants pursuant to a certificate issued to one of the defendants by the North Dakota Public Service Commission; that solely because of the public liability and property damage endorsement to the policy the plaintiff became obligated to pay and did make payment in the total sum of $3,684.25 for the property damages and personal injuries arising out of the collisions described; that pursuant to the reimbursement clause contained in the insurance policy, the plaintiff made due demand on the defendants for reimbursement of the aforedescribed amount of money paid by the plaintiff, but that the defendants rejected said demand; and that the reimbursement clause in the policy read as follows: "The insured agrees to reimburse the insurer for any payment the insurer would not have been obligated to make under the terms of the policy except for the provisions of this endorsement."

In their answer the defendants generally denied the allegations of the complaint and, in addition thereto, alleged that they were not liable for the payment of the claims paid by State Auto because State Auto failed to comply with § 49–18–33, which, they alleged, provides that the insurer's liability arises only upon final judgment and these claims were not reduced to final judgment. The defendants further alleged that they were not liable because the 1960 Diamond T diesel tractor at the time of the accidents was being operated as a temporary substitute for a tractor listed in the policy but which was in a garage for repairs and that therefore the public liability and property damage endorsement

providing for reimbursement did not apply. They also alleged that the reimbursement clause is void as being in contravention of public policy and the laws of the State of North Dakota.

■ We must first consider the application of Rule 50(a) of the North Dakota Rules of Civil Procedure. The part of the rule pertinent here reads as follows:

### RULE 50

### MOTION FOR A DIRECT-ED VERDICT

(a) When made—Effect. At the close of all of the evidence any party may move the court to direct a verdict in his favor upon one or more claims and against one or more parties. If the adverse party objects thereto, the court shall submit to the jury the issues of all claims as to which evidence has been received * * * and as to such claims the motion shall be denied. * * *

North Dakota Rules of Civil Procedure.

As State Auto as adverse party resisted the alternative motion for a directed verdict or for dismissal, and as the trial court granted the motion for dismissal on the ground of insufficiency of the evidence, the motion for dismissal as to issues of fact must be treated as a motion for a directed verdict. The trial court therefore should have submitted to the jury the issues of all the claims as to which evidence had been received, and as to such claims the motion should have been denied.

■ In considering the validity of a ruling on a motion for a directed verdict, we must consider the evidence in the light most favorable to the party against whom the motion was made. Stokes v. Dailey, 85 N.W.2d 745 (N.D. 1957).

In *Stokes* this court said:

In the case of State ex rel. Brazerol v. Yellow Cab Co., 62 N.D. 733, 245 N.W. 382, 384, this court held that a motion

for a directed verdict should not be granted unless the moving party is entitled to judgment as a matter of law upon the merits as appears from the evidence. In that connection the court said:

"Such motion will not be granted where there is an issue for the jury to pass upon under the evidence (Zink v. Lahart, 16 N.D. 56, 110 N.W. 931; State Bank of Maxbass v. Hurley Farmers Elevator Co., 33 N.D. 272, 156 N.W. 921), but, in determining the validity of the ruling, the *evidence must be considered in the light most favorable to the party against whom the motion is made.* (Warnken v. Langdon Mercantile Co., 8 N.D. 243, 77 N.W. 1000; John Miller Co. v. Klovstad, 14 N.D. 435, 105 N.W. 164; Schantz v. Northern Pac. R. Co., 42 N.D. 377, 173 N.W. 556; Chubb v. Baldwin Piano Co., 54 N.D. 189, 208 N.W. 975)." [Emphasis supplied by court in *Stokes.*]

Stokes v. Dailey, 85 N.W.2d 745, at 751 (N.D. 1957).

Was there an issue for the jury to pass upon under the evidence in this case?

The Diamond T diesel tractor that the Skjonsbys contend was a non-owned temporary substitute for the insured Autocar diesel tractor, which was out of use and being repaired at the time of the accidents, was first listed on the insurance policy as an insured vehicle. Later, at the request of C. J. Skjonsby, while Bruce Skjonsby was "laid up" due to illness, coverage was canceled as to the Diamond T diesel tractor. This request was made when the Diamond T was leased to International Transport.

Part IV(a) (3) of the policy covers a non-owned vehicle temporarily used as a substitute for a described vehicle withdrawn from normal use:

(3) Temporary Substitute Automobile— under coverages A, B, and division 1 of coverage C, an automobile not owned by the named insured or his spouse if a

resident of the same household, while temporarily used as a substitute for the described automobile when withdrawn from normal use because of its breakdown, repair, servicing, loss or destruction[.]

■ The question then is whether the Diamond T tractor was a non-owned temporary substitute and thus covered by the policy of insurance at the time of the occurrence of the accidents out of which the claim in this case arises.

Was the Diamond T tractor a non-owned vehicle?

In a statement given State Auto by C. J. Skjonsby on November 21, 1962, less than a month after the accidents, he said:

My name is C. J. Skjonsby, age 53, married and reside at 1710 2nd St. No., Fargo, No. Dak. Myself together with my son Bruce own and operate what is known as the Skjonsby Truck Line, our place of business is located on West Main Ave., Fargo, No. Dak. On October 30th, 1962, and about 3:00 p. m. Mr. Elvin Steinhouse of West Fargo, No. Dak., and in our employment was operating *our* 1960 Diamond T. Diesel Truck Tractor and was pulling a 1959 Martin Low-Boy Semi Trailer Serial No. 8675. The Trailer was loaded with a Case 1000 Front End Loader. This loader is owned by Robert Gibb & Sons. Mr. Steinhouse had picked up the Case front end loader at Grand Forks, No. Dak., during the forenoon and was delivering same to Robert Gibb & Sons the same afternoon, when he had an accident at 15th Street & 3rd Ave. No. in Fargo, No. Dak., * * * [Emphasis supplied.]

A supplementary statement was given State Auto by C. J. Skjonsby on December 26, 1962. In this statement C. J. Skjonsby described the 1958 Autocar as his truck tractor.

In C. J.'s income tax return for 1962 he reported all of the income to and deducted all of the expenses of the Skjonsby Truck Lines. The full amount of depreciation for both the 1958 Autocar tractor and the 1960 Diamond T tractor was taken by C. J.

From a review of the foregoing, the contentions of the defendants that the 1958 Autocar tractor was wholly owned by Bruce W. Skjonsby, the named insured; that the 1960 Diamond T tractor was wholly owned by C. J. Skjonsby; that C. J. Skjonsby had no interest in Skjonsby Truck Lines; and that therefore the 1960 Diamond T tractor was a non-owned vehicle and thus covered by the non-owned temporary substitute provisions of the policy, seem far from established.

The ownership of the Diamond T tractor was a question of fact upon which evidence had been received.

■ Where honest and intelligent men may fairly differ in their conclusions from the evidence upon any material fact in the case, it is for the jury to pass on such evidence. Schantz v. Northern Pacific Railway Co., 42 N.D. 377, 173 N.W. 556, at page 557; Stokes v. Dailey, N.D., 85 N.W.2d 745; Terry v. Muller, 8 Cir., 190 F.2d 170.

Stokes v. Dailey, 97 N.W.2d 676, at 682 (N.D. 1959).

As the evidence was not such that only one conclusion could have been drawn therefrom, the court should have submitted the issue of ownership to the jury for determination.

Unless the court should have for some other reason directed a verdict for the defendants, the case must be remanded to the trial court for a new trial.

The Skjonsbys contend that, as the claims in this case were not reduced to final judgment before they were paid by State Auto, State Auto cannot recover in its action for reimbursement.

The pertinent part of what is contended to be the controlling statute reads as follows:

49–18–33. Insurance or bond required of common or contract carrier—Liability of insurer and surety—Trial.—The commission in granting a certificate to any common motor carrier and in granting a permit to any contract carrier shall require the owner or operator first to procure either liability and property damage insurance or a surety bond to be approved by the commission as to the form, sufficiency, and surety thereof and written by a company authorized to write such insurance in this state in an amount to be designated by the commission. The conditions of such liability insurance or surety bond shall be such as to guaranty the payment of any loss or damage to property, or on account of the death of or injury to persons, resulting from the negligence of such carrier. * * * Upon final judgment the insurer or surety shall become liable directly to the owner of such judgment for the full amount thereof but not exceeding the amount of the policy of insurance or surety bond applicable to such loss. * * *

North Dakota Century Code.

The insurance policy included a reimbursement clause which read as follows:

When this policy is certified as proof of financial responsibility for the future under the provisions of the motor vehicle financial responsibility law of any state or province, such insurance as is afforded by this policy for bodily injury liability or for property damage liability shall comply with the provisions of such law which shall be applicable with respect to any such liability arising out of the ownership, maintenance or use of the automobile during the policy period, to the extent of the coverage and limits of liability required by such law, but in no event in excess of the limits of liability stated in this policy. The insured agrees to reimburse the company for any payment made by the company which it would not have been obligated to make under the terms of this policy except for the agreement contained in this paragraph.

■ Section 49–18–33 requires that an applicant for a certificate or permit to operate as a common or contract motor carrier procure either liability and property damage insurance or a surety bond to guarantee the payment of loss or damage to property, or on account of the death of or injury to persons resulting from the negligence of the carrier. The purpose of this requirement was set forth by this court in construing the predecessor of this statute as follows:

The great purpose of the statutory requirement that an applicant for a certificate or permit to operate as a common motor carrier must furnish and file with the Board of Railroad Commissioners an indemnity contract, evidenced either by an insurance policy or a surety bond, is "to protect the interests of the public by securing compensation for injuries to persons and property from negligent operations of the carriers." * * *

Miller v. State Auto. Ins. Ass'n, 74 N.D. 306, 21 N.W.2d 621, at 628.

The provision that the insurer or surety becomes liable upon final judgment requires the claimant to reduce its claim to a final judgment to hold the insurer or surety liable. It protects the insurance company or surety. The mere fact that this provision also protects the insured if a policy includes a reimbursement clause does not prevent the insurer and the insured from entering into an agreement permitting the insurer to pay the claim without first reducing the claim to a judgment.

A contrary construction of the statute, requiring final judgment even if the insurer and the insured have agreed that the claims are proper and should be paid,

would compel useless litigation and serve only to delay the payment of just claims to injured parties.

Whether the parties did so agree is a question of fact which should have been submitted to the jury for its determination.

The Skjonsbys further argue that if settlement were contemplated within the terms of § 49–18–33, State Auto must prove the insured's negligence was the sole and proximate cause of the damages, together with the reasonable value of the damages, and that this was not done in the trial court.

Our view, in line with what we have previously said herein, is that the insurer, to recover under a reimbursement clause as contained in the policy herein, need not prove that the insured's negligence was the sole and proximate cause of the damages nor the reasonable value of the damages if the insured agrees to the settlement.

Skjonsbys rely on the case of Employers Mut. Cas. Co. v. Nicholas, 124 Colo. 544, 238 P.2d 1120, as supporting their contention. As the settlement between the third party and the insurer in that case was without consent of the insured, it can have no bearing on the case at bar.

Skjonsbys contend that, even if a final judgment is not a necessary prerequisite to reimbursement under our statute, approval by C. J. Skjonsby of the settlements proposed by State Auto did not bind either C. J. Skjonsby or Bruce Skjonsby because only the named insured, Bruce Skjonsby, could approve a settlement.

The trial court, in granting the motions, orally commented that the evidence introduced by State Auto to show that C. J. Skjonsby had authority to approve the settlement agreements stressed the year 1962. The court apparently was of the opinion that C. J. Skjonsby had no authority to approve the settlement agreements in 1963, because no evidence had been introduced to establish the existence of an actual agency during that year.

On cross-examination C. J. Skjonsby said he acted as assistant manager of Skjonsby Truck Lines during the time that Bruce Skjonsby was unable to work in 1962 and that Bruce had given him a power of attorney to run Skjonsby Truck Lines during that time. He further testified on cross-examination that he was authorized to sign checks for Skjonsby Truck Lines and that he executed a chattel mortgage to property which included a truck owned by Bruce Skjonsby and in so doing signed the mortgage as "Skjonsby Truck Lines, by C. J. Skjonsby." Bruce Skjonsby testified that while he had been out-of-town, Plaintiff's Exhibit 10, which is an application for insurance from State Auto, dated January 15, 1962, was signed by C. J. Skjonsby as "Skjonsby Truck Line, by Bruce W. Skjonsby."

In the syllabus of Scherbenske v. Maier, 71 N.W.2d 770, 771 (N.D. 1955), our court said:

1. An agency may be shown by circumstances, such as the relation of the parties to each other and their conduct with reference to the subject matter of the contract as well as a previous course of dealing with the subject matter.

2. "An agent has such authority as the principal actually or ostensibly confers upon him. Actual authority is such as a principal intentionally confers upon the agent or intentionally or by want of ordinary care allows the agent to believe himself to possess. Ostensible authority is such as the principal intentionally or by want of ordinary care causes or allows a third person to believe the agent to possess." Sec. 3–0202, NDRC 1943 [Now § 3–02–02, N.D.C.C.].

See also: Fidelity & Cas. Co. of New York v. First Nat'l Bank & Trust Co., 71 N.D. 415, 1 N.W.2d 401.

Section 3–03–03 reads as follows:

When ostensible authority binding.—A principal is bound by acts of his agent under a merely ostensible authority to

those persons only who in good faith and without ordinary negligence have incurred a liability or parted with value upon the faith thereof.

North Dakota Century Code.

Without determining all of the questions relating to the authority of C. J. Skjonsby which the facts present, it is clear that the facts do give rise to the question whether C. J. Skjonsby had ostensible authority to act as an agent of Bruce Skjonsby in approving the settlement agreements, and that it cannot be said as a matter of law that C. J. Skjonsby had no authority to approve the agreements.

Skjonsbys contend that § 49–18–33 is an all-inclusive public liability and property damage requirement for common and contract carriers and does not authorize a provision for reimbursement from the insured to be included in an insurance policy. They further argue that the reimbursement provision in the insured's policy appears to be void for want of mutuality and failure of consideration. Skjonsbys have not cited any authority in support of their contentions, and we have not found any cases wherein our court has spoken on the subject.

The United States Court of Appeals, 10th Circuit, has upheld the validity of a reimbursement clause in an insurance policy containing a public liability personal injury and property damage endorsement issued to a motor carrier. The court said:

* * * In the Preferred policy Bennett agreed to reimburse Preferred for any payment it was required to make which it would not have been required to make under the terms of the policy except for the provisions of condition 4 and endorsement "E". Although the language of the policy is somewhat ambiguous as to what payments should be reimbursed, it appears to us that the essence of these reimbursement clauses is that Bennett will repay Preferred for any payment made by the company which it would not have been required to make under the terms of the policy. We think the trial court was correct when it concluded that under the terms of the Preferred policy Bennett was under obligation to reimburse Preferred for any sum which it had paid for the loss in question. * *

Insurance is written to cover a variety of risks and combination of risks and premiums are calculated according to the risk. There can be no doubt in this case as between Preferred and Bennett that the parties were at liberty to contract for insurance to cover such risks as they saw fit and be bound by the terms of the contract, and courts may not rewrite the contract. [Citations omitted.]

Bennett v. The Preferred Acc. Ins. Co. of New York, 192 F.2d 748, at 750–751 (10th Cir.1951).

See also: Wheeler v. American Fid. & Cas. Co., 164 F.2d 590 (5th Cir.1947); Travelers Mut. Cas. Co. v. Herman, 116 F.2d 151 (8th Cir.1940); Service Mut. Liab. Ins. Co. v. Aronofsky, 308 Mass. 249, 31 N.E.2d 837; Tri-State Ins. Co. v. Hobbs, 347 P.2d 226 (Okla. 1959).

We believe that these cases apply the proper rule and therefore conclude that the reimbursement clause contained in the policy in the instant case is valid.

The final contentions made by the defendants are that State Auto may not assert estoppel for the first time on this appeal and that State Auto did not exercise due diligence in ascertaining whether Skjonsby Truck Lines was a partnership or a sole proprietorship.

There is evidence in the record that C. J. Skjonsby may have had the ostensible authority to approve the settlement agreements, and, if this authority had been found to exist, Bruce Skjonsby would have been estopped to deny it. Meyer v. National Fire Ins. Co. of Hartford, Conn., 67 N.D. 77, 269 N.W. 845.

Whether State Auto exercised due diligence in ascertaining the facts relating to C. J. Skjonsby's authority to approve the settlement agreements is not clearly indicated by the record. We are certain, however, that it cannot be said as a matter of law that State Auto failed to exercise due diligence.

None of the contentions advanced by the defendants requires that their motions should have been granted as a matter of law. The judgment appealed from is therefore reversed, and the case is remanded for a new trial.

TEIGEN, C. J., and STRUTZ and KNUDSON, JJ., concur.

MURRAY, J., not being a member of the Court at the time of submission of this case, did not participate.